UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YVONNE W. ALEX,

                           Plaintiff,

v.                                                          1:12-CV-1021
                                                            (GTS/CFH)
GEN. ELEC. CO; GALE O'GORMAN, Human Res.
Manager; DIANE VAVRASEK, Human Res.
Representative/Union Relations; RICHARD BOSWELL,
Facilitator; MEEGAN SCULLY, Facilitator; JOHN
JORDAN, Facilitator; THOMAS POLUKORT,
Facilitator; JOSH SCRANTON, Operator, Chip and
Grind; WILLIAM CAPRON, Operator, Chip and Grind;
MICHELE LANOUE, Operator, Bucket Assembly;
CHRISTOPHER BONIEWSKI, Operator, Bucket
Assembly; MICHAEL TOMASSONE, D21 Inspector,
Magnetic Particle Testing; LIZBETH GOLAB, Material
Handler; and COLEY WHITTAKER, Sec. Officer,

                           Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

THE SANDERS FIRM, PC                          ERIC SANDERS, ESQ.
   Counsel for Plaintiff
1140 Avenue of the Americas, 9th Floor
New York, NY 10036

NIXON PEABODY LLP                             JOHN E. HIGGINS, ESQ.
   Counsel for Management Defendants
677 Broadway, 10th Floor
Albany, NY 12207

McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.      GLEN P. DOHERTY, ESQ.
   Counsel for Hourly Defendants
677 Broadway
Albany, NY 12207-2503

GLENN T. SUDDABY, United States District Judge

**<u>DECISION and ORDER</u>**

Currently before the Court, in this employment discrimination action filed by Yvonne W. Alex ("Plaintiff") against General Electric Company and thirteen of its employees, are the following two motions: (1) a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and/or for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Josh Scranton, William Capron, Michele Lanoue, Christopher Boniewski, Michael Tomassone, Lizbeth Golab, and Coley Whittaker (the "Hourly Defendants"); and (2) (1) a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and/or for summary judgment pursuant to Fed. R. Civ. P. 56 filed by General Electric Company, Gale O'Gorman, Diane Vavrasek, Richard Boswell, Meegan Scully, John Jordan, and Thomas Polukort (the "Management Defendants"). (Dkt. Nos. 32, 35.) For the reasons set forth below, the Hourly Defendants' motion is granted in part and denied in part; and the Management Defendants' motion is granted in part and denied in part.

## TABLE OF CONTENTS

I.     RELEVANT BACKGROUND.................................................................................4
       A.     Plaintiff's Claims.....................................................................................4
       B.     Parties' Briefing on Hourly Defendants' Motion................................5
              1.     Hourly Defendants' Memorandum of Law in Chief...................5
              2.     Plaintiff's Opposition Memorandum of Law..............................7
              3.     Hourly Defendants' Reply Memorandum of Law.....................9
       C.     Parties' Briefing on Management Defendants' Motion.......................10
              1.     Management Defendants' Memorandum of Law in Chief..........10
              2.     Plaintiff's Opposition Memorandum of Law..............................12
              3.     Management Defendants' Reply Memorandum of Law...........16
       D.     Undisputed Material Facts.....................................................................18

II.    GOVERNING LEGAL STANDARDS.............................................................18
       A.     Motion to Dismiss for Failure to State a Claim.................................18
       B.     Motion for Summary Judgment............................................................20
       C.     Plaintiff's Claims and Defendants' Defenses.....................................22

III.   ANALYSIS..........................................................................................................22
       A.     Hourly Defendants' Motion..................................................................22
              1.     Race Discrimination Claim Under Section 1981........................22
              2.     Retaliation Claim Under Section 1981.......................................25
              3.     Hostile-Work-Environment Claim Under Section 1981...........25
              4.     Sexual Harassment Claim Under Section 296............................39
              5.     Race Discrimination Claim Under Section 296..........................41
              6.     Retaliation Claim Under Section 296.........................................41
              7.     Hostile-Work-Environment Claim Under Section 296...............42
              8.     Other Claims..............................................................................43
       B.     Management Defendants' Motion.........................................................43
              1.     Sexual Harassment Claim Against GE Under Title VII............43
              2.     Race Discrimination Claim Against GE Under Title VII..........54
              3.     Retaliation Claim Against GE Under Title VII.........................58
              4.     Hostile-Work-Environment Claim Against GE Under Title VII.........62
              5.     Race Discrimination Claim Under Section 1981........................62
              6.     Retaliation Claim Under Section 1981.......................................63
              7.     Hostile-Work-Environment Claim Under Section 1981............64
              8.     Sexual Harassment Claim Under Section 296............................64
              9.     Race Discrimination Claim Under Section 296..........................65
              10.    Retaliation Claim Under Section 296.........................................65
              11.    Hostile-Work-Environment Claim Under Section 296.............65

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Claims**

Generally, in her Amended Complaint, Plaintiff, an African-American woman who began

working at Defendant General Electric in November 1981, alleges that, starting at some point in

2008 and continuing until her termination on September 20, 2011, she was repeatedly

discriminated against based on her race and gender by numerous co-workers at General Electric,

whose management either did not believe Plaintiff's complaints or simply refused to fully

investigate those complaints, instead reassigning her and then terminating her.  (Dkt. No. 4.)

Because this Decision and Order is intended primarily for the review of the parties, the Court

will not recite in detail the remaining factual allegations of Plaintiff's Amended Complaint, the

most relevant of which are described below in Part III of this Decision and Order.  Rather, the

Court will refer the reader to the Amended Complaint in its entirety.  (*Id*.)

Based on the factual allegations of Plaintiff's Amended Complaint, she asserts the

following eleven claims: (1) a claim against Defendant General Electric alleging sexual

harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a claim

against Defendant General Electric alleging race discrimination in violation of Title VII; (3) a

claim against Defendant General Electric alleging retaliation in violation of Title VII; (4) a claim

against Defendant General Electric alleging the creation of a hostile work environment based on

gender and/or race in violation of Title VII; (5) a claim against all Defendants alleging race

discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"); (6) a claim against all

Defendants alleging retaliation in violation of Section 1981; (7) a claim against all Defendants

alleging the creation of a hostile work environment in violation of Section 1981; (8) a claim

against all Defendants alleging sexual harassment in violation of New York State Executive Law § 296 ("Section 296"); (9) a claim against all Defendants alleging race discrimination in violation of Section 296; (10) a claim against all Defendants alleging retaliation in violation of Section 296; and (11) a claim against all Defendants alleging the creation of a hostile work environment based on gender and/or race in violation of Section 296.  (*Id*.)  As relief for her injuries, Plaintiff seeks 50 million dollars.  (*Id*.)

### B.    Parties' Briefing on Hourly Defendants' Motion

#### 1.    Hourly Defendants' Memorandum of Law in Chief

Generally, in their memorandum of law in chief, the Hourly Defendants assert seven arguments with regard to Plaintiff's claims against them.  (Dkt. No. 33 [Hourly Defs.' Memo. of Law].)

First, argue the Hourly Defendants, 16 of Plaintiff's 20 factual allegations against them do not concern discrimination by them *because of race or sex* (but merely discrimination because of political differences); and Plaintiff's remaining four factual allegations (a) fail to plausibly suggest that the Hourly Defendants *caused* the alleged adverse employment actions (sufficient to give rise to a claim for race discrimination or retaliation), and (b) fail to plausibly suggest conduct that was severe or pervasive enough to alter the conditions of her employment, or even that she witnessed most of that conduct  (sufficient to state a claim of hostile work environment).  (*Id*. at 14-19 [attaching pages "7" through "12" of Hourly Defs.' Memo. of Law].)

Second, argue the Hourly Defendants, as indicated above, Plaintiff's claims for race discrimination and retaliation under Section 1981 and Section 296 fail to allege facts plausibly

suggesting that the Hourly Defendants either (a) *caused* the alleged adverse employment actions to which she was subjected (i.e., the notice of job elimination, reassignment, denial of overtime, and termination), or (b) even had the capacity to make, enforce or change the employment contract between Plaintiff and Defendant General Electric. (*Id*. at 19-23 [attaching pages "12" through "16" of Hourly Defs.' Memo. of Law].)

Third, argue the Hourly Defendants, as indicated above, Plaintiff's claims for hostile work environment under Section 1981 and Section 296 fail to allege facts plausibly suggesting that (a) each Hourly Defendant directly participated in creating a hostile work environment (independent of the acts of others), or (b) the limited instances alleged were objectively severe or pervasive enough to alter the conditions of the employment of Plaintiff based on her personal experiences. (*Id*. at 23-29 [attaching pages "16" through "22" of Hourly Defs.' Memo. of Law].)

Fourth, argue the Hourly Defendants, Plaintiff's eighth claim (alleging sexual harassment by all Defendants under Section 296), and her eleventh claim (alleging the creation of a hostile work environment based on gender and race by all Defendants under Section 296), fails to allege facts plausibly suggesting any sexual harassment by any of the Hourly Defendants. (*Id*. 29 [attaching page "22" of Hourly Defs.' Memo. of Law].)

Fifth, argue the Hourly Defendants, all claims against the Hourly Defendants in their "official capacities" are redundant of her claims against Defendant General Electric. (*Id*. at 30 [attaching page "23" of Hourly Defs.' Memo. of Law].)

Sixth, argue the Hourly Defendants, any claims that Plaintiff is attempting to assert under the Fourteenth Amendment or any other provision of the United States Constitution (and 42 U.S.C. § 1983) should be dismissed for failure to allege facts plausibly suggesting that the Hourly Defendants' actions involved state action. (*Id*.)

Seventh, argue the Hourly Defendants, in the alternative, the Hourly Defendants are entitled to summary judgment because, based on the current record, it is undisputed that (a) Plaintiff was not subjected to discrimination by the Hourly Defendants, (b) Plaintiff was not subjected to retaliation by the Hourly Defendants, and (c) there was no hostile work environment created by the Hourly Defendants. (*Id.* at 30-31 [attaching pages "23" and "24" of Hourly Defs.' Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts six arguments. (Dkt. No. 40 [Plf.'s Opp'n Memo. of Law].)

First, argues Plaintiff, she does not assert any Title VII claims against the individual Hourly Defendants. (*Id.* at 20-21.)

Second, argues Plaintiff, she voluntarily withdraws her discrimination claims against the individual Hourly Defendants in their official capacities (specifically, the fifth through eleventh claims listed in Part I.A. of this Decision and Order), because they are legally redundant. (*Id.* at 22-23.)

Third, argues Plaintiff, her Section 1981 race-discrimination claim and Section 1981 hostile-work-environment claim are actionable, because she has alleged facts plausibly suggesting that (a) the harassment was severe and pervasive, and (b) the Hourly Defendants modified the benefits, privileges, and terms and conditions of Plaintiff's contractual relationship with her employer; and her Section 296 race-discrimination claim and Section 296 hostile-work-environment claim are actionable, because she has alleged facts plausibly suggesting that the Hourly Defendants attempted to aid, abet, incite, compel or coerce her supervisor to participate in the discrimination. (*Id.* at 29-32.)

Fourth, argues Plaintiff, her Section 296 sexual-harassment claim is actionable, for the reasons stated in the preceding paragraph. (*Id*. at 32.)

Fifth, argues Plaintiff, her Title VII, Section 1981 and Section 296 retaliation claims are actionable, because she has alleged facts plausibly suggesting that (a) she participated in protected activity (through making complaints to Human Resources, her union, the security department and/or Equal Employment Opportunity Commission), (b) the Hourly Defendants knew of the protected activity, (c) the Hourly Defendants subjected her to an adverse employment action (through collectively making the workplace unsafe and reducing her overtime), and (d) the adverse employment action was causally connected to the protected activity (in that it followed closely the protected activity). (*Id*. at 33-35.)

Sixth, argues Plaintiff, the Hourly Defendants' are not entitled to summary judgment essentially based on the following reasoning: (a) most, if not all, of the materials relied on by the Hourly Defendants may not be considered by the Court in deciding their motions to dismiss for failure to state a claim because those materials are not "integral to the complaint" and may not be "judicially noticed," (b) a court cannot, on a motion to dismiss for failure to state a claim, consider extraneous materials without converting the motion to one for summary judgment, (c) such a conversion is impermissible unless the opponent is given a reasonable opportunity to contest the movant's evidence, and (d) here, no such reasonable opportunity has been given to Plaintiff because discovery has not yet been completed. (*Id*. at 35-39.) In support of her request to stay decision on the Hourly Defendants' motion for summary judgment pending completion of discovery, Plaintiff submits the affidavit of her counsel. (Dkt. No. 41.)

3.    **Hourly Defendants' Reply Memorandum of Law**

Generally, in their reply memorandum of law, the Hourly Defendants assert five arguments.  (Dkt. No. 45 [Hourly Defs.' Reply Memo. of Law].)

First, argue the Hourly Defendants, Plaintiff fails to successfully rebut their argument that 16 of her 20 factual allegations against them do not concern discrimination by them because of race or sex, and that her remaining four factual allegations do not allege that the conduct was severe or pervasive enough to alter the conditions of her employment.  (*Id*. at 7-8 [attaching pages "3" and "4" of Hourly Defs.' Reply Memo. of Law].)

Second, argue the Hourly Defendants, Plaintiff does not successfully rebut their argument that her claims for race discrimination and retaliation fail to allege facts plausibly suggesting that the Hourly Defendants caused any alleged adverse employment actions, or had the capacity to change or affect the employment contract or her relations with Defendant General Electric.  (*Id*. at 8-9 [attaching pages "4" and "5" of Hourly Defs.' Reply Memo. of Law].)

Third, argue the Hourly Defendants, Plaintiff does not successfully rebut their argument that her claim of hostile work environment against them fails to allege facts plausibly suggesting that (a) each Hourly Defendant (standing alone) directly participated in creating a hostile work environment, or (b) the limited instances alleged were objectively severe or pervasive enough to alter the conditions of Plaintiff's employment.  (*Id*. at 9-11 [attaching pages "5" through "7" of Hourly Defs.' Reply Memo. of Law].)

Fourth, argue the Hourly Defendants, Plaintiff does not successfully rebut their argument that her claims of sexual harassment fail to allege facts plausibly suggesting sexual harassment by any of the Hourly Defendants.  (*Id*. at 11 [attaching page "7" of Hourly Defs.' Reply Memo. of Law].)

Fifth, argue the Hourly Defendants, Plaintiff does not successfully rebut their summary-judgment argument for the following reasons: (a) Plaintiff's prematureness argument is governed by Fed. R. Civ. P. 56(d), which is unavailable under the circumstances due to the fact that the facts in question are within her own personal knowledge; (b) moreover, the Hourly Defendant expressly moved for summary judgment (albeit in the alternative), necessitating a substantive response by Plaintiff, which she did not offer; and (c) indeed, by failing to properly deny the factual assertions in the Managing Defendants' Rule 7.1 Statement (incorporated by reference by the Hourly Defendants), Plaintiff has effectively admitted those factual assertions, warranting the entry of summary judgment against her. (*Id*. at 12-13 [attaching pages "8" and "9" of Hourly Defs.' Reply Memo. of Law].)

### C. Parties' Briefing on Management Defendants' Motion

#### 1. Management Defendants' Memorandum of Law in Chief

Generally, in their memorandum of law in chief, the Management Defendants assert seven arguments. (Dkt. No. 37 [Mgmt. Defs.' Memo. of Law].)

First, argue the Management Defendants, all claims against the individual Management Defendants in their "official capacities" are redundant of her claims against Defendant General Electric. (*Id*. at 15 [attaching page "8" of Mgmt. Defs.' Memo. of Law].)

Second, argue the Management Defendants, any claims that Plaintiff is attempting to assert under the Fourteenth Amendment or any other provision of the United States Constitution (and 42 U.S.C. § 1983) should be dismissed for failure to allege facts plausibly suggesting that the Management Defendants' actions involved state action. (*Id*. at 16-17 [attaching pages "9" and "10" of Mgmt. Defs.' Memo. of Law].)

Third, argue the Management Defendants, any "pattern and practice" claims that Plaintiff is attempting to assert must be dismissed as unavailable under Title VII. (*Id.* at 17-18 [attaching pages "10" and "11" of Mgmt. Defs.' Memo. of Law].)

Fourth, argue the Management Defendants, Plaintiff's Title VII claims for sexual harassment and any Title VII claims based on events occurring before October 11, 2009, must be dismissed for failure to exhaust her available administrative remedies. (*Id.* at 18-19 [attaching pages "11" and "12" of Mgmt. Defs.' Memo. of Law].)

Fifth, argue the Management Defendants, all of Plaintiff's claims must be dismissed for failure to state a claim for the following reasons (especially when various documents outside of the four corners of the Amended Complaint are considered, as is permitted, under the circumstances): (a) many of those claims are supported only by conclusory allegations of Defendant General Electric's "long history of discrimination," "biased behavior," different treatment of employees based on race and gender, and "flawed and unfair" investigations, and other of those claims are supported only by vague allegations regarding the leaving of "Birther" packages on Plaintiff's desk "in or around 2008," the making of complaints of "racially offensive postings in the workplace," Defendant Lanoue's "lying in wait for" Plaintiff in a locker room, and Defendant Tommasone's display of "Anti-Obama or Anti-Muslim postings"; (b) the vast majority of Plaintiff's factual allegations do not concern discrimination because of race or sex (but merely discrimination because of political differences); (c) the remainder of Plaintiff's factual allegations fail to plausibly suggest conduct that was severe or pervasive enough to alter the conditions of her employment, the existence of a specific basis for imputing the conduct to the employer, or even the fact that she witnessed most of that conduct (sufficient to state a claim

of hostile work environment); and (d) Plaintiff fails to allege facts plausibly suggesting the personal involvement of the individual Management Defendants in the unlawful conduct alleged (sufficient to give rise to a claim under Section 1981 or Section 296).  (*Id*. at 20-37 [attaching pages "13" through "30" of Mgmt. Defs.' Memo. of Law].)

Sixth, argue the Management Defendants, as a matter of law, the following claims must be dismissed as barred by the applicable statutes of limitations: (a) any claim under Title VII based on events occurring before January 19, 2010 (300 days before Plaintiff filed her administrative charge with the Equal Employment Opportunity Commission, on November 15, 2010); (b) any claim under Section 296 based on events occurring before June 25, 2009 (three years before Plaintiff filed her Complaint in this action, on June 25, 2012); and (c) any claim under Section 1981 based on events occurring before June 25, 2008 (four years before Plaintiff filed her Complaint in this action, on June 25, 2012).  (*Id*. at 37-40 [attaching pages "30" through "33" of Mgmt. Defs.' Memo. of Law].)

Seventh, argue the Management Defendants, in the alternative, the Management Defendants are entitled to summary judgment on the following claims, based on the current record: (a) her claims relating to overtime; (b) her claims relating to her reassignment in February 2010; (c) her claims relating to her termination in September 2011; and (d) her claims of hostile work environment.  (*Id*. at 43-57 [attaching pages "36" through "50" of Mgmt. Defs.' Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in her opposition memorandum of law, Plaintiff asserts twelve arguments. (Dkt. No. 40 [Plf.'s Opp'n Memo. of Law].)

First, argues Plaintiff, she does not assert any Title VII claims against the individual Management Defendants.  (*Id*. at 20-21.)

Second, argues Plaintiff, she does not assert any "pattern or practice" claims against Defendant General Electric (because they are legally unavailable).  (*Id*. at 21-22.)

Third, argues Plaintiff, she voluntarily withdraws her discrimination claims against the individual Management Defendants in their official capacities (because they are legally redundant).  (*Id*. at 22-23.)

Fourth, argues Plaintiff, her Title VII sexual-harassment claim and Title VII race-discrimination against Defendant General Electric are actionable, because (a) they were reasonably related to the two charges that she filed with Equal Employment Opportunity Commission ("EEOC"), and (b) she has met all four prongs of establishing a prima facie case of sex and race discrimination under Title VII; and her Title VII hostile-work-environment claim against Defendant General Electric is actionable, because (a) at least one racially or sexually harassing act demonstrating the challenged work environment occurred within the 300-day limitations period, and (b) she alleges facts plausibly suggesting that Defendant General Electric did nothing to protect her from being discriminated against due to her sex and race, causing her to be subjected to such treatment on a pervasive, oppressive and continual basis since 2008.  (*Id.* at 23-29.)

Fifth, argues Plaintiff, her Title VII sexual-harassment claim, Title VII race-discrimination claim and Title VII hostile-work-environment claim arising from conduct occurring prior to June 25, 2009, are not time-barred, because (a) "a court and jury may consider the entire period of the hostile work environment in determining liability," and (b) in any event, the allegations are "relevant background evidence in support of a timely claim."  (*Id*. at 29.)

Sixth, argues Plaintiff, her Section 1981 race-discrimination claim and Section 1981 hostile-work-environment claim are actionable, because she has alleged facts plausibly suggesting that (a) the harassment was severe and pervasive, and (b) the Management Defendants either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it; and her Section 296 race-discrimination claim and Section 296 hostile-work-environment claim are actionable, because she has alleged facts plausibly suggesting that the Management Defendants actually participated in the discrimination. (*Id*. at 29-32.)

Seventh, argues Plaintiff, her Section 1981 race-discrimination claim, Section 1981 hostile-work-environment claim, Section 296 race-discrimination claim and Section 296 hostile-work-environment claim arising from conduct occurring prior to June 25, 2009, are not time-barred, because (a) "a court and jury may consider the entire period of the hostile work environment in determining liability," and (b) in any event, the allegations are "relevant background evidence in support of a timely claim." (*Id*. at 32.)

Eighth, argues Plaintiff, her Section 296 sexual-harassment claim is actionable, for the reasons stated in the preceding two paragraph. (*Id*. at 32.)

Ninth, argues Plaintiff, her Section 296 sexual-harassment claim arising from conduct occurring prior to June 25, 2009, is not time-barred, because (a) "a court and jury may consider the entire period of the hostile work environment in determining liability," and (b) in any event, the allegations are "relevant background evidence in support of a timely claim." (*Id*. at 33.)

Tenth, argues Plaintiff, her Title VII, Section 1981 and Section 296 retaliation claims are actionable, because she has alleged facts plausibly suggesting that (a) she participated in protected activity (through making complaints to Human Resources, her union, the security

department and/or EEOC), (b) the Management Defendants knew of the protected activity, (c) the Management Defendants subjected her to an adverse employment action (through collectively making the workplace unsafe, reducing her overtime, "restructuring" her department, and ultimately terminating her), and (d) the adverse employment action was causally connected to the protected activity (in that it followed closely the protected activity). (*Id*. at 33-35.)

Eleventh, argues Plaintiff, her Title VII, Section 1981 and Section 296 retaliation claims arising from conduct occurring prior to June 25, 2009, are not time-barred, because (a) "a court and jury may consider the entire period of the hostile work environment in determining liability," and (b) in any event, the allegations are "relevant background evidence in support of a timely claim." (*Id*. at 35.)

Twelfth, argues Plaintiff, the Management Defendants are not entitled to summary judgment essentially based on the following reasoning: (a) most, if not all, of the materials submitted by the Management Defendants may not be considered by the Court in deciding their motions to dismiss for failure to state a claim because those materials are not "integral to the complaint" and may not be "judicially noticed," (b) a court cannot, on a motion to dismiss for failure to state a claim, consider extraneous materials without converting the motion to one for summary judgment, (c) such a conversion is impermissible unless the opponent is given a reasonable opportunity to contest the movant's evidence, and (d) here, no such reasonable opportunity has been given to Plaintiff in that discovery has not yet been completed. (*Id*. at 35-39.)

### 3.    Management Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, the Management Defendants assert seven arguments.  (Dkt. No. 47 [Mgmt. Defs.' Reply Memo. of Law].)

First, argue the Management Defendants, Plaintiff has voluntarily withdrawn her "official capacity" claims.  (*Id*. at 7 [attaching page "3" of Mgmt. Defs.' Reply Memo. of Law].)

Second, argue the Management Defendants, Plaintiff has abandoned any attempt to assert any constitutional claims.  (*Id*. at 7-8 [attaching pages "3" and "4" of Mgmt. Defs.' Reply Memo. of Law].)

Third, argue the Management Defendants, Plaintiff has conceded that any "pattern or practice" method of proof is not available in this case.  (*Id*. at 8 [attaching page "4" of Mgmt. Defs.' Reply Memo. of Law].)

Fourth, argue the Management Defendants, Plaintiff has (a) conceded that she must pursue her administrative remedies before filing a Title VII claim in federal court, and (b) failed to oppose the Management Defendants' argument that she did not do so in this case with regard to any Title VII claim based on events occurring before October 11, 2009.  (*Id*. at 8-9 [attaching pages "4" and "5" of Mgmt. Defs.' Reply Memo. of Law].)

Fifth, argue the Management Defendants, Plaintiff's opposition papers fail to rebut the Management Defendants' argument that many of her allegations are conclusory and/or not based on race or gender (but political differences).  (*Id*. at 9-12 [attaching pages "5" through "8" of Mgmt. Defs.' Reply Memo. of Law].)

Sixth, argue the Management Defendants, the continuing-violation theory cannot salvage Plaintiff's time-barred claims, because (a) discrete acts of discrimination falling within the

statutory time period do not render timely discrete acts of discrimination falling outside of the time period, and (b) discrete hostile-work-environment allegations falling within the statutory time period do not render timely discrete hostile-work-environment allegations falling outside of the time period, especially where (as here) the allegations span a period of 30 years and involved different supervisors and co-workers on different shifts and times, with no alleged policy or custom connecting them. (*Id*. at 12-13 [attaching pages "8" and "9" of Mgmt. Defs.' Reply Memo. of Law].)

Seventh, argue the Management Defendants, they are entitled to summary judgment on Plaintiff's reassignment claims, overtime claims, termination claims, and hostile-work-environment claims for the following reasons: (a) the Management Defendants have supported the facts asserted in their Rule 7.1 Statement with accurate citations to admissible record evidence, and Plaintiff has failed to deny those factual assertions with accurate citations to admissible record evidence, thus effectively admitting those assertions under the Local Rules of Practice for this Court; (b) Plaintiff's argument that the Court should not "convert" the Management Defendants' motion to dismiss for failure to state a claim into one for summary judgment is inapplicable, because certain matters outside of the four corners of a complaint may indeed be considered on a motion to dismiss for failure to state a claim, and in any event the Management Defendant expressly moved for summary judgment (albeit in the alternative); and (c) Plaintiff's counsel's affidavit is insufficient to warrant a stay of the Court's decision on the Management Defendants' motion for summary judgment, because that affidavit is untimely, it is not based on personal knowledge, it improperly contains legal argument, it does not specify what facts she seeks and how those facts are reasonably expected to create a genuine issue of material

fact, and it regards information already within Plaintiff's knowledge or easily ascertained by her without discovery. (*Id*. at 13-19 [attaching pages "9" through "15" of Mgmt. Defs.' Reply Memo. of Law].)

### D.    Undisputed Material Facts

In support of their motion for summary judgment, the Management Defendants submitted a 139-page Statement of Material Facts, pursuant to Local Rule 7.1(a)(3) containing 608 paragraphs of factual assertions, each of which is followed by a specific record citation. (Dkt. No. 38.) In support of their motion for summary judgment, the Hourly Defendants submitted a Statement of Material Facts that adopts, and incorporates by reference, the Statement of Facts submitted by the Management Defendants. (Dkt. No. 33, Attach. 3.) In her opposition papers, Plaintiff does not submit a response to Defendants' Statements of Material Facts, as required by Local Rule 7.1(a)(3). (*See generally* Dkt. Nos. 40, 41.) Nor does she adduce any record evidence. (*Id*.) Furthermore, Plaintiff's Amended Complaint is not verified and thus does not carry the force and effect of an affidavit. (Dkt. No. 4.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing Defendants' motions to dismiss for failure to state a claim, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Wade v. Tiffin Motorhomes, Inc.*, 05-CV-1458, 2009 WL 3629674, at *3-5 (N.D.N.Y. Oct. 27, 2009) (Suddaby, J.), which accurately recites that legal standard. In addition, the Court will reference portions of that

standard where necessary below in Part III of this Decision and Order.  The Court adds only two points.

First, in her opposition memorandum of law, Plaintiff mistakenly relies on the Supreme Court's observation, in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  (Dkt. No. 40, at 35-36 [Plf.'s Opp'n Memo. of Law].)  That observation was "retire[d]" by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  As the Supreme Court recognized in *Twombly*, and as Plaintiff recognizes elsewhere in her motion papers, the correct standard governing a motion to dismiss a failure to state a claim turns not on the conceivability of an actionable claim but the plausibility of an actionable claim.  *Twombly*, 550 U.S. at 555-70.

Second, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the following matters outside of the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1]    *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the

**B.**    **Motion for Summary Judgment**

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the legal standard governing Defendants' motions for summary

judgment, the Court will not recite that well-known legal standard in this Decision and Order,

but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cnty. Sheriff's

Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which

accurately recites that legal standard.  In addition, the Court will reference portions of that

standard where necessary below in Part III of this Decision and Order.  The Court adds only two

points.

First, pursuant to Local Rule 7.1(a)(3) of the Local Rules of Practice of this Court, "[t]e

Court shall deem admitted any properly supported facts set forth in the Statement of Material

Facts that the opposing party does not specifically controvert" by "denying [them] . . . in

matching numbered paragraphs" and supporting those denials with "a specific citation to the

---

factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.
2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6)
"may consider the facts alleged in the complaint, documents attached to the complaint as
exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is
not incorporated by reference, the court may neverless consider it where the complaint relies
heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). This rule is enforceable "even

where the nonmoving party [is] a plaintiff in a civil rights case." *Washington v. Cnty. of*

*Onondaga*, 04-CV-0997, 2009 U.S. Dist. LEXIS 90086, at *35, n.19 (N.D.N.Y. Sept. 29, 2009)

(Suddaby, J.) (collecting cases).

> Second, Fed. R. Civ. P. 56(d) provides as follows:

> > If a nonmovant shows by affidavit or declaration that, for specified
> > reasons, it cannot present facts essential to justify its opposition, the
> > court may:
> > > (1) defer considering the motion or deny it;
> > > (2) allow time to obtain affidavits or declarations or to take
> > > discovery; or
> > > (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). This rule has been appropriately characterized as providing "a narrow

exception to the availability of summary judgment in instances where a party cannot fairly

respond to a summary judgment motion because of the inability, through no fault of that party, to

acquire evidence which is available and would preclude the entry of summary judgment."

*Steptoe v. City of Syracuse*, 09-CV-1132, 2010 WL 5174998, at *4 (N.D.N.Y. Oct. 5, 2010)

(Peebles, M.J.), *adopted by* 2010 WL 5185809 (N.D.N.Y. Dec. 15, 2010) (Mordue, C.J.).[2] To

obtain relief under Fed. R. Civ. P. 56(d), a litigant must submit an affidavit showing "(1) what

facts are sought to resist the motion and how they are to be obtained, (2) how those facts are

reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has

made to obtain them, and (4) why the affiant has been unsuccessful in those efforts." *Miller v.*

---

[2]    *Accord, Gill v. Calescibetta*, 00-CV-1553, 2009 WL 890661, at *7 (N.D.N.Y.
March 31, 2009) (Report-Recommendation by Peebles, M.J., adopted by Suddaby, J.); *Gill v.
Hoadley*, 261 F. Supp.2d 113, 132 (N.D.N.Y. 2003) (Peebles, M.J.), *adopted by* Memorandum-
Decision and Order (N.D.N.Y. filed Jan. 9, 2004) (Scullin, C.J.).

*Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir. 2003).[3]

### C.    Plaintiff's Claims and Defendants' Defenses

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims and Defendants' defenses in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties.  (*See generally* Dkt. No. 33 [Hourly Defs.' Memo. of Law]; Dkt. No. 37 [Mgmt. Defs.' Memo. of Law]; Dkt. No. 40 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 45 [Hourly Defs.' Reply Memo. of Law]; Dkt. No. 47 [Mgmt. Defs.' Reply Memo. of Law].) Rather, he Court will merely reference portions of those standards where necessary below in Part III of this Decision and Order.

## III.    ANALYSIS

### A.    Hourly Defendants' Motion

#### 1.    Claim Against All Hourly Defendants Alleging Race Discrimination Under 42 U.S.C. § 1981

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Hourly Defendants' memoranda of law.  *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.  To those reasons, the Court adds the following analysis.

As an initial matter, Plaintiff has voluntarily withdrawn her Section 1981 claim for race discrimination against all Hourly Defendants in their official capacities, leaving only that claim against them in their individual capacities.

---

[3]    *Accord, Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *Capital Imaging Assoc., P.C. v. Mohawk Valley Medical Assoc., Inc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989) (McCurn, C.J.), *aff'd*, 996 F.2d 537 (2d Cir. 1993).

Regarding that remaining claim, one of the elements of a claim of race discrimination under Section 1981 is that the plaintiff sustained an adverse employment action. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Joseph*, 465 F.3d at 90 (quotation marks omitted). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id*. (quotation marks omitted). "Petty slights" or "annoyances" are not sufficient. *Wilson v. Emhart Teknologies LLC*, 566 F. Supp.2d 120, 125 (D. Conn. 2008). Even condemnable racial epithets, without more, are not sufficient. *Khan v. Abercrombie & Fitch, Inc.*, 35 F. Supp.2d 272, 277 (E.D.N.Y. 1999) ("Khan alleges that she suffered an adverse employment action when Williams called her a 'black bitch.' Williams' comment is condemnable, but is not, without more, actionable."). Here, the adverse employment actions alleged were (1) the receipt of a notice of job elimination, (2) the reassignment, (3) the denial of overtime, and (4) the termination. (*See generally* Dkt. No. 4.)

However, implicit in the above-described element is that the defendant against whom the claim is asserted *caused* the adverse employment action. *See, e.g., Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) ("[I]n order to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with a discriminatory action . . . personal liability under § 1981 must be predicated on that actor's

personal involvement."); *White v. Pacifica Found.*, 11-CV-2192, 2013 WL 5288851, at *8 (S.D.N.Y. Sept. 19, 2013) ("Plaintiff's NYSHRL and NYCHRL claims against Brown fail for the same reasons that his Section 1981 claim fails: there is no evidence that Brown played any role in any adverse employment action taken against Plaintiff."); *Span v. Enlarged City Sch. Dist. of Troy*, 12-CV-0975, 2012 WL 3886177, at *4 (N.D.N.Y. Sept. 6, 2012) (McAvoy, J.) ("The complaint does not allege facts supporting the necessary personal involvement or direct participation of Defendants Mayo, MarroGiroux, Wager-Rounds, Clinton, Schofield, Tuttman, Walsh or Scully [in the alleged race discrimination] to establish individual liability under § 1981 or § 1983.").

Here, Plaintiff's Amended Complaint does not allege facts plausibly suggesting that the Hourly Employees, who were Plaintiff's co-workers, caused any of the adverse actions alleged. As an initial matter, the Amended Complaint rather expressly alleges (albeit often conclusorily) that the adverse employment actions were taken by the *Management* Defendants, not by the Hourly Defendants.  (*See, e.g.,* Dkt. No. 4, at ¶¶ 55, 65, 75, 76, 81-84, 93, 94.)  Moreover, the Amended Complaint does not allege facts plausibly suggesting that the Hourly Defendants had the authority to participate in the decisions made by the Management Defendants.  (*See generally* Dkt. No. 4.)  Rather, the Amended Complaint alleges that the Hourly Defendants were merely Plaintiff's co-workers.[4]  Nor does the Amended Complaint allege facts plausibly suggesting that the Hourly Employees somehow coerced, persuaded, or even asked the

---

[4]        Specifically, the Amended Complaint alleges as follows, in pertinent part: Plaintiff was a "D-21 Inspector within the Steam Turbine COE"; Defendant Scranton was an "Operator, Chip and Grind"; Defendant Capron was an "Operator, Chip and Grind"; Defendant Lanoue was an "Operator, Bucket Assembly"; Defendant Boniewski was an "Operator, Bucket Assembly"; Defendant Tomassone was a "D21 Inspector, Magnetic Particle Testing"; Defendant Golab was a "Material Handler"; and Defendant Whittaker was a "Security Officer." (Dkt. No. 4, at ¶¶ 10, 18.)

Management Defendants to take the adverse action alleged.  (*See generally* Dkt. No. 4.)

The Court notes that it reaches this conclusion regardless of whether it considers merely the four corners of Plaintiff's Amended Complaint or the Amended Complaint together with the documents incorporated by referenced in, and/or integral to that Amended Complaint (such as various of Plaintiff's administrative and company complaints, and the resulting investigations and decisions).

For all of these reasons, the Court dismisses Plaintiff's claim against all Hourly Defendants alleging race discrimination under Section 1981.

### 2.    Claim Against All Hourly Defendants Alleging Retaliation Under 42 U.S.C. § 1981

For each of the reasons that the Court dismissed Plaintiff's claim against all Hourly Defendants alleging race discrimination under Section 1981 (stated above in Part III.A.1. of this Decision and Order), the Court dismisses Plaintiff's claim against all Hourly Defendants alleging retaliation under Section 1981.

### 3.    Claim Against All Hourly Defendants Alleging Hostile Work Environment Under 42 U.S.C. § 1981

### a.    Analysis Pursuant to Fed. R. Civ. P. 12(b)(6)

As an initial matter, Plaintiff has voluntarily withdrawn her Section 1981 claim for hostile work environment against all Hourly Defendants in their official capacities, leaving only that claim against them in their individual capacities.

Regarding that remaining claim, generally, to state a claim for hostile work environment under Section 1981, a plaintiff must allege facts plausibly suggesting that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or

pervasive to alter the conditions of the victim's employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The Second Circuit has explained that "[t]his test has objective and subjective elements: the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

With regard to the objective element, in determining whether an environment was sufficiently hostile, all the circumstances are considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quotation marks omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374. "For racist comments, slurs, and jokes to constitute a hostile work environment, there [generally] must be more than a few isolated incidents of racial enmity." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation marks omitted).

With regard to the subjective element, generally, one of the factors relevant to determining whether the plaintiff subjectively perceive the environment to be abusive is whether the abusive conduct occurred in the plaintiff's presence. *See, e.g., Greaves v. St. Luke's/ Roosevelt Hosp. Ctr.*, 03-CV-7424, 2005 U.S. Dist. LEXIS 4082, at *33 (S.D.N.Y. March 17, 2005) (rejecting plaintiff's Section 1981 claim of hostile work environment because, "[w]ith the exception of a single hearsay remark, made outside his presence, Greaves fails to point to any

26

discriminatory insult or abuse"); *cf. Benjamin v. Metro. Transp. Auth.*, 07-CV-3561, 2012 WL 3188764, at *12 (S.D.N.Y. Aug. 2, 2012) ("While some of Benjamin's fellow Plaintiffs also make allegations about a hostile work environment, the record does not indicate that Benjamin was aware of any comments made to other Plaintiffs, let alone was present to hear them and have them impact his own work environment.").

With regard to hostile-work-environment claims against co-workers under Section 1981, courts in the Second Circuit allow such claims where the co-workers "direct[ly] participat[ed] in creating a hostile work environment." *See, e.g., Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (reversing district court's grant of summary judgment in favor of plaintiff's co-worker–Corrections Officer William Balsamico–regarding plaintiff's hostile-work-environment claim under Section 1981); *Jean-Louis v. Am. Airlines*, 08-CV-3898, 2010 U.S. Dist. LEXIS 77292, at *13-14 (E.D.N.Y. July 30, 2010) (collecting cases). "Direct participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) (quotation marks omitted). Generally, courts are careful not to hold an individual liable for conduct that was isolated and unconnected to the misconduct of over individuals. *See, e.g., Smith v. Town of Hempstead Dept. of Sanitation*, 798 F. Supp.2d 443, 455 (E.D.N.Y. 2011) (granting summary judgment to plaintiff's co-worker, John Beyer, on claim of hostile work environment under Section 1981, because he never showed the noose that he hung to any African-American individuals, and he never made any racist remarks in the workplace).

Here, the Court concludes that the factual allegations of Plaintiff's Amended Complaint are insufficient to state a claim for a hostile work environment under Section 1981 against Defendants Whittaker, Scranton, Boniewski, Golab, Capron, and Tomassone, for the reasons stated in the Hourly Defendants' memoranda of law. *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order. To those reasons, the Court adds the following analysis.

With regard to Defendant Whittaker, Plaintiff alleges that, "on or about September 17, 2010, defendant COLEY WHITTAKER (Caucasian Male) told William Brown (Caucasian Male) and other Caucasian Male employees 'remember you did not see anything,' referring to [Plaintiff's] complaints of sexual harassment and race discrimination." (*Id.* at ¶ 62.) However, the allegation that Defendant Whittaker was "referring to [Plaintiff's] complaints of sexual harassment and race discrimination" is entirely conclusory and/or speculative. It bears noting that, at the time Defendant Whittaker made this remark, the most recent act of alleged racial discrimination was committed by Defendant Lanoue, on September 13, 2010. (*Id.* at ¶ 61.) There is no factual allegation plausibly suggesting that Defendant Whittaker was present when that act or discrimination occurred, or when any previous act of discrimination occurred. (*See generally* Dkt. No. 4.) Nor is there any factual allegation plausibly suggesting that Defendant Whittaker knew of those acts when he made the alleged remark on September 13, 2010, other than (perhaps) knowing of Defendant Lanoue's conduct from before June 23, 2010. (*Id.* at ¶ 60.) Under the circumstances alleged, the Court concludes that the isolated remark alleged–which is free of any racial epithets and any hint of physical threats or humiliation–is insufficient to constitute direct participation by Defendant Whittaker in the creation of a hostile work environment.

28

With regard to Defendant Scranton, Plaintiff alleges that, on or about January 21, 2011, defendant[] . . . JOSH SCRANTON (Caucasian Male) along with others [was] overheard in a discussion referring to African Americans as 'N-----s.'" (*Id.* at ¶ 71.)  For the sake of brevity, the Court will not linger on the fact that this allegation is conspicuously devoid of any factual allegation plausibly suggesting that it was *Plaintiff* who overheard the discussion–a fact that is alleged elsewhere in the Amended Complaint.  (*Compare id.* at ¶ 71 *with id.* at ¶ 61.)  More important is the fact that this is the sole factual allegation against Defendant Scranton: while the racial epithet is condemnable, it is not, without more, actionable.  Moreover, there are no factual allegations plausibly suggesting that Defendant Whittaker knew of the other Defendants' acts of alleged discrimination when he used the alleged racial epithet on January 21, 2011.  (*See generally* Dkt. No. 1.)  Under the circumstances alleged, the Court concludes that the isolated act alleged is insufficient to constitute direct participation by Defendant Scranton in the creation of a hostile work environment.

With regard to Defendant Boniewski, Plaintiff alleges that, "sometime [before] July 12, 2006," while employed at "Super Steel," "defendant CHRISTOPHER BONIEWSKI (Caucasian Male) . . . [was] implicated engaging in serious racially offensive actions against several African American employees at Super Steel including the posting of offensive articles such as a 'Hangman's Noose.'" (*Id.* at ¶ 20.)  Of course, Defendant Boniewski is not liable to Plaintiff under Section 1981 for such actions, which occurred more than four years before she filed her Complaint in this action and do not even involve Plaintiff.  However, because all complaints must be liberally construed, *see* Fed. R. Civ. P. 8(e), the Court must construe this allegation with Plaintiff's other factual allegations against Defendant Boniewski.  In those other factual

allegations, Plaintiff alleges as follows: "in or around 2008, she . . . observed a 'Hangman's Noose' on the floor," which "was immediately removed by defendant JOHN JORDAN (Caucasian Male) . . . ."; and, on or about January 21, 2011, defendant[] . . . CHRISTOPHER BONIEWSKI . . . along with others [was] overheard in a discussion referring to African Americans as 'N------s.'" (*Id*. at ¶¶ 25, 71.)

The Court acknowledges that these allegations, when construed together, present a closer question than do the allegations regarding Defendants Scranton and Boniewski. The implication that Defendant Boniewski at least brought the "Hangman's Noose" into the workplace appears somewhat plausible. Furthermore, any allusion to racially motivated lynching, even if vague, is particularly condemnable. However, the Court has difficulty concluding that the isolated acts of bringing a "Hangman's Noose" into the workplace in 2008 and the use of a racial epithet in 2011 are sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, especially given the lack of a factual allegation plausibly suggesting that (1) Defendant Boniewski put the "Hangman's Noose" on the floor for Plaintiff to see, and (2) he used the racial epithet in Plaintiff's presence. (*See generally* Dkt. No. 1.) Moreover, there are no factual allegations plausibly suggesting that Defendant Boniewski knew of the other Defendants' acts of alleged discrimination when he took the actions alleged. (*Id*.) Under the circumstances alleged, the Court concludes that the isolated acts alleged are insufficient to constitute direct participation by Defendant Boniewski in the creation of a hostile work environment.

With regard to Defendant Golab, Plaintiff alleges that "numerous times between 2009 and 2010, defendant LIZBETH GOLAB (Caucasian Female) would send her anti-immigrant emails from her personal email account including a depiction of a Caucasian Male 'Biker Guy'

with the slogan 'I am a White Gun Owner, Down with Immigrants.'" (*Id*. at ¶ 52.)  Somewhat

plausible from such a depiction is the implication that the "White Gun Owner" would be

prepared to use violence against the "immigrants."  Less plausible is that Defendant Golab was

endorsing–rather than opposing–gun ownership, anti-immigrant sentiments or veiled threats of

violence.  More important, the Court has some difficulty concluding that the expression of

antipathy towards immigrants constitutes the expression of antipathy toward Blacks, much less

toward Plaintiff personally.  *Kodengada v. Int'l Bus. Mach. Corp.*, 88 F. Supp.2d 236, 243

(S.D.N.Y. 2000) ("[A] derogatory comment about another person generally does not have the

same sting as an ethnic slur directed at a minority group member.") (quotation marks omitted),

*aff'd*, 242 F.3d 366 (2d Cir. 2000).  The Court notes that there are no factual allegations

plausibly suggesting that Plaintiff is an immigrant.  (*See generally* Dkt. No. 1.)  Moreover, there

are no factual allegations plausibly suggesting that Defendant Golab knew of the other

Defendants' acts of alleged discrimination when she sent the email messages.  (*Id*.)  Under the

circumstances alleged, the Court concludes that the isolated acts alleged are insufficient to

constitute direct participation by Defendant Golab in the creation of a hostile work environment.

With regard to Defendant Capron, Plaintiff alleges that, "on or about November 17, 2010,

defendants' MICHELE LANOUE and WILLIAM CAPRON (Caucasian Male) were having a

discussion about the race or ethnicity of her, Jeffrey Walton (African American Male) and a

Hispanic Female Manager," and that "defendant MICHAEL LANOUE persuaded defendant

WILLIAM CAPRON to tell Jeffrey Walton that he is either a 'Spic,' 'Half-N----,' or 'N-----.'"

(*Id*. at ¶¶ 63, 64.)  The Court liberally construes the Amended Complaint as alleging that

Defendant Lanoue successfully persuaded Defendant Capron to make the remark (such that he

actually made the remark).  For the sake of brevity, the Court will not linger on the fact that the remark was not directed at Plaintiff, or even (apparently) heard by Plaintiff.  More important is the fact that this is the sole factual allegation against Defendant Capron: while the racial epithet is condemnable, it is not, without more, actionable.  Moreover, there are no factual allegations plausibly suggesting that Defendant Capron knew of the other Defendants' acts of alleged discrimination when he made the remark alleged.  (*Id*.)  Under the circumstances alleged, the Court concludes that the isolated act alleged is insufficient to constitute direct participation by Defendant Capron in the creation of a hostile work environment.

With regard to Defendant Tomassone, Plaintiff asserts the following six factual allegations: (1) "on or about January 12, 2011, she observed the display of a brown monkey hanging by its blue cape on defendant MICHAEL TOMASSONE'S (Caucasian Male) locker several days before President Obama's visit [on or about January 21, 2011]"; (2) "mysteriously before President Obama's advance team of Secret Service Agents swept the locker room, the brown monkey was removed from defendant MICHAEL TOMASSONE'S locker; (3) "before this display, defendant MICHAEL TOMASSONE has displayed other depictions of Anti-Obama and Anti-Muslim postings; (4) "on or about January 12, 2011, defendant[] MICHAEL TOMASSONE . . . along with others [was] overheard in a discussion referring to African Americans as 'N------s'"; (5) "in or around February 2011, defendant MICHAEL TOMASSONE placed a document in the work area referencing 'Are You Smarter Than a 5th Grader' hosted by Jeff Foxworthy with eleven reasons why you may be a 'Racist' or a 'Muslim' if you are offended by this document"; and (6) on or after August 16, 2011, "because of her complaints, defendant MICHAEL TOMASSONE told other defendant GE employees 'she is a 'troublemaker' and if she keeps making complaints, she is going to lose her certifications.'"  (*Id*. at ¶¶ 68-73, 87-89.)

32

As for the "display of a brown monkey . . . [wearing] a blue cape," for the sake of brevity, the Court will assume that the display was racial in nature, although that fact is not at all clear.  Arguably plausible from the appearance of the display nine days before President Barrack Obama's visit to the company is the assertion of a racial slur.  However, less plausible is a suggestion that physical harm should befall the president, given the lack of factual allegations plausibly suggesting whether the "brown monkey" was hanging by its cape or was *hanged* by its cape.[5]  Moreover, the brunt of that slur appears to have been directed at the president, not at Plaintiff.  As for "the other depictions of Anti-Obama and Anti-Muslim postings," those depictions do not appear to have been directed at Plaintiff.  The Court notes that there are no factual allegations plausibly suggesting that Plaintiff is a Muslim.  (*See generally* Dkt. No. 1.) As for the racial epithet used by Defendant Tomassone in a discussion, as pointed out above, this allegation is conspicuously devoid of any factual allegation plausibly suggesting that it was *Plaintiff* who overheard the discussion (a fact that is alleged elsewhere in the Amended Complaint).  As for the document referencing "eleven reasons why you may be a 'Racist' or a 'Muslim,'" the document appears to be a comedic attempt either directed at Muslims or perhaps made at the expense of racists.  Again, there are no factual allegations plausibly suggesting that Plaintiff is a Muslim.  As for the remark that (because of her complaints) Plaintiff is a "troublemaker" who may "lose her certifications," that remark (which was apparently not even made in Plaintiff's presence) is free of any racial epithets and any hint of physical threats or humiliation.

---

[5]    The Court notes that an examination of an apparent photograph of the "brown monkey" does not yield an answer to this question.  (Dkt. No. 36, Attach. 3, at 32.)

Of course, when these allegations are construed together, another close question is presented. The number of incidents (five over the course of approximately eight months) is not small. However, they appear more episodic than continuous (occurring at some point before January 12, 2011, on or about January 12, 2011, at some point in or around February 2011, and on or about August 16, 2011). Moreover, the racial slur alleged and racial epithet alleged are condemnable. However, they either were not directed at Plaintiff or were not made in her presence. Furthermore, there are no factual allegations plausibly suggesting that Defendant Tomassone knew of the other Defendants' acts of alleged discrimination when he took the acts alleged. (*Id*.) Under the circumstances alleged, the Court concludes that the episodic acts alleged are insufficient to constitute direct participation by Defendant Tomassone in the creation of a hostile work environment.

However, with regard to Defendant Lanoue, the Court concludes that the factual allegations of Plaintiff's Amended Complaint do state a claim for a hostile work environment under Section 1981 against Defendant Lanoue for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Parts I.B.2. To those reasons, the Court adds the following analysis.

Plaintiff asserts the following 15 factual allegations against Defendant Lanoue: (1) before May 2009, Defendant Lanoue (together with decedent Frank Harris and other Caucasian employees) placed "racially offensive postings in the workplace"; (2) "defendant MICHELE LANOUE would post depictions of 'Miss Piggy' referring to her"; (3) "defendant MICHELE LANOUE and decedent Frank Harris would post depictions of prominent persons of color such as: 'First Dog' referring to the First Lady Michelle Obama (African American Female); Supreme Court Justice Sonia Sotomayor (Hispanic Female) with a 'Grand Wizard Hat' and a Swastika;

'2012 Do Not Re-nig' referencing President Barack Obama (African Male); and a host of other postings referring to persons of color as 'terrorists,' 'Nig,' and 'N-----'"; (4) "defendant MICHELE LANOUE and decedent Frank Harris would post depictions of firearms, shooting magazines, etc.";  (5) "defendant MICHELE LANOUE and decedent Frank Harris would hold up pictures of shooting magazines as she walked past them"; (6) "defendant MICHELE LANOUE and decedent Frank Harris complained to defendant GE through its Human Resources Department that she was taking pictures of the workplace"; (7) "on or about September 8, 2009, defendant MICHELE LANOUE intentionally operated pass buckets one on stage one and one on stage three in an unsafe manner whereas [Plaintiff] had to quickly move to avoid being struck on the head by the blade she was inspecting on the turbine"; (8) apparently in September or October 2009, Plaintiff "told defendant GE through its Human Resources Department that she feared for her personal safety demanding that defendant MICHELE LANOUE . . . be fired"; (9) "on or about October 1, 2009, defendant MICHELE LANOUE and decedent Frank Harris walked around the workplace with a caricature of President Obama on their t-shirt that read 'Jerk in the Box'"; (10) "on or about October 13, 2009, as [Plaintiff] walked through the work area, defendant MICHELE LANOUE and decedent Frank Harris made pig sounds"; (11) "on or about February 23, 2010, [Plaintiff] refused to work with defendant MICHELE LANOUE because she feared for her safety"; (11) "on or about June 22, 2010, defendant MICHELE LANOUE was lying in wait for [Plaintiff] in the locker room"; (12) "on or about September 13, 2010, while attending a company meeting, [Plaintiff] overheard defendant MICHELE LANOUE telling Vincent Fusco and David Barlett 'the woman of color, I just want to grab her neck and slam her against the wall,' referring to plaintiff"; (13) "on or about November 17, 2010, defendants MICHELE LANOUE and WILLIAM CAPRON (Caucasian Male) were having a discussion

about the race or ethnicity of her, Jeffrey Walton (African American Male) and a Hispanic Female Manager," during which "defendant MICHELE LANOUE persuaded defendant WILLIAM CAPRON to tell Jeffrey Walton that he is either a 'Spic,' 'Half-N-----,' or 'N-----'"; (14) "she believes that [on or before June 29, 2011] defendant MICHELE LANOUE placed [a] posting on the community bulletin board [near a break room]" reading "2012 Don't Re-nig"; and (15) "on or about August 16, 2011, while [Plaintiff was] on her way to work, an individual believed to be defendant MICHELE LANOUE sped up then suddenly cut off plaintiff in an attempt to cause her to lose control of the vehicle."  (*Id*. at ¶¶ 27-31, 33, 38, 40, 41, 43, 54, 59, 61, 63, 64, 79, 80, 87.)

Many of these factual allegations are of little significance to Plaintiff's Section 1981 hostile-work-environment claim against Defendant Lanoue.  For example, the allegations regarding "Miss Piggy" and the making of "pig sounds" plausibly suggest slurs regarding Plaintiff's gender and/or weight, not her race.[6]  Moreover, the allegation regarding the "Jerk in the Box" t-shirt does not appear to plausibly suggest a racial slur.  Furthermore, even if racial in nature, certain of slurs and epithets (e.g., regarding the Michele Obama, Chief Justice Sotomayor) were not directed at Plaintiff.  Similarly, while definitely racial in nature, certain of the other slurs and epithets (e.g., regarding Barrack Obama and Jeffrey Walton) were again not directed at Plaintiff.

However, more troubling is the fact that, based on Plaintiff's factual allegations, (1) the alleged conduct was often physically threatening in nature (involving an allusion to guns, "lying in wait," an expression of a violent desire, and near misses by a turbine blade and automobile),

---

[6]    The Court notes that the Amended Complaint also contains, *inter alia*, an allegation that, in or before October 2009, decedent Frank Harris posted some graffiti near Plaintiff's workstation stating, "Obama does not want fatties."  (Dkt. No. 4, at ¶ 39.)

(2) the alleged conduct instilled in Plaintiff a fear of physical harm (of which she twice complained to superiors), and (3) the alleged conduct was accompanied by a racial animus toward Blacks in general, if not Plaintiff in particular (as "the woman of color"). While it is arguable that the conduct was motivated by a dislike of Plaintiff for non-racial reasons (e.g., based on her gender, weight, political views, or personality), it is also plausible that Defendant Lanoue's conduct was motivated by a dislike of Plaintiff based on her race.

For these reasons, the Court concludes that, liberally construed, Plaintiff's Amended Complaint has stated a hostile-work-environment claim against Defendant Lanoue under Section 1981.[7] However, again, Plaintiff's Amended Complaint has failed to state a hostile-work-environment claim against the other Hourly Defendants.

### b.    Analysis Pursuant to Fed. R. Civ. P. 56

In support of their alternative argument that this claim should be dismissed under Fed. R. Civ. P. 56, the Hourly Defendants rely on with the *Management* Defendants' Statement of Material Facts. (Dkt. No. 33, Attach. 3.) Ordinarily, the Court does not permit such incorporation by reference because of (1) the confusion created regarding which "incorporated" facts are actually being relied on as material to the motion, and (2) the likelihood that the focus of the "incorporated" statement of facts is somewhat different that is the focus of the movant's statement of facts. *Cf. Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2012 WL 2522651, at *2 (N.D.N.Y. June 27, 2012) (Suddaby, J.) ("Setting aside the risk that such reference could cause the referring document to violate the District's rule on page

---

[7]    The Court notes that, because the Hourly Defendants did not subject this claim to an untimeliness argument, the Court (which cannot address such issues *sua sponte* under the circumstances) does not address the untimeliness of any claim under Section 296 based on events occurring before June 25, 2009 (three years before Plaintiff filed her Complaint in this action, on June 25, 2012).

limitations (once it is incorporated into the referred document), such a practice also risks causing the opposing party to inadvertently overlook the attempted incorporation, and risks confusing the Court as to which 'incorporated' arguments are actually being relied upon.").

This second reason is particularly applicable here.  While certainly lengthy (and somewhat material with regard to Plaintiff's Section 1981 claim for hostile work environment against Defendant Lanoue), the Management Defendants' Statement of Material Facts focuses primarily on Plaintiff's complaints to the Management Defendants, and the Management Defendants' responses to those complaints, rather than on Defendant Lanoue's conduct.  (*See generally* Dkt. No. 38.)

Granted, the undisputed facts asserted therein appear to indicate that, generally, the conduct of Defendant Lanoue was merely the product of a political dispute between her and Plaintiff, in which Plaintiff actively participated.  However, missing from the record are (1) a declaration and/or deposition of Defendant Lanoue limiting her personal involvement in the discriminatory actions alleged, and (2) a declaration and/or deposition of Plaintiff admitting such lack of personal involvement.  Simply stated, it appears that, at the current time, insufficient evidence has been adduced to permit the Court to grant summary judgment in Defendant Lanoue's favor on this claim.  (The Court reaches the same conclusion with regard to the remainder of Plaintiff's claims against the Management Defendants, to the extent they rely on Fed. R. Civ. P. 56 as an alternative basis for dismissal.)

As a result, the Court denies this alternative motion without prejudice.

### 4.    Claim Against All Hourly Defendants Alleging Sexual Harassment Under N.Y. Exec. Law § 296

As an initial matter, Plaintiff has voluntarily withdrawn her Section 296 claim for sexual harassment against all Hourly Defendants in their official capacities, leaving only that claim against them in their individual capacities.

Regarding that remaining claim, as indicated above in Part III.A.3. of this Decision and Order, the only factual allegations of sexual harassment that Plaintiff asserts against the Hourly Defendants are those that she asserts against Defendant Lanoue: Plaintiff's factual allegations against Defendants Whittaker, Scranton, Boniewski, Golab, Capron, and Tomassone are free from references to Plaintiff's sex or gender, or any plausible suggestion that the actions were taken because of Plaintiff's sex or gender.

As for Plaintiff's factual allegations against Defendant Lanoue referencing Plaintiff's sex or gender, there are five such allegations: (1) the depictions of "Miss Piggy"; (2) the making "pig sounds"; (3) the reference to Michelle Obama as "First Dog"; (4) the depiction of Justice Sotomayor wearing a "Grand Wizard Hat" with a swastika; and (5) Defendant Lanoue's statement, "the woman of color, I just want to grab her neck and slam her against the wall." The alleged slurs directed at Michelle Obama and Justice Sotomayor were not directed at Plaintiff. In addition, the allegation regarding "Miss Piggy" plausibly suggests discrimination based on one's weight or perhaps a perception of one's physical appearance as much as discrimination based on gender (especially when construed together with the allegation regarding the "pig sounds"). *See Baliva v. State Farm Mut. Auto. Ins. Co.*, 730 N.Y.S.2d 655, 657 (N.Y. App. Div. 4th Dept. 2001) ("In order to establish a hostile work environment [under Section 296], plaintiffs must establish that the conduct complained of was 'severe or pervasive' . . . and was *based on*

39

*plaintiff's gender . . . .*") (emphasis added).  However, when those allegations are construed together with Plaintiff's allegation regarding "the *woman* of color" (emphasis added), the suggestion that Defendant Lanoue's antipathy for Plaintiff was due to her sex or gender becomes plausible (albeit barely).

While the fact that Defendant Lanoue herself is female makes the inference of sexual harassment more difficult, it does not, under the circumstances, render Plaintiff's claim of sexual harassment implausible, given the law.  *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 55 (2d Cir.1998) ("The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."); *see, e.g., Giannone v. Deutsche Bank Sec., Inc.*, 392 F. Supp.2d 576, 587 (S.D.N.Y. 2005) ("Although the fact that Plaintiff was terminated by Estes, a woman, makes an inference of discrimination more difficult, . . . it does not sound the death knell on Giannone's prima facie case.") (internal quotation marks and citation omitted); *cf. Feingold v. New York*, 366 F.3d 138, 155 (2d Cir.2004) ("We . . .  reject the district court's suggestion that an inference of discrimination cannot be drawn because Feingold was fired by another Jew.").

For these reasons, the Court concludes that, liberally construed, Plaintiff's Amended Complaint has stated a sexual-harassment claim against Defendant Lanoue under Section 296.[8]

Turning to the Hourly Defendants' argument that, in the alternative, this claim should be dismissed under Fed. R. Civ. P. 56, the Court rejects that argument for the reasons stated above

---

[8]    The Court notes that, because the Hourly Defendants did not subject this claim to an untimeliness argument, the Court (which cannot address such issues *sua sponte* under the circumstances) does not address the untimeliness of any claim under Section 296 based on events occurring before June 25, 2009 (three years before Plaintiff filed her Complaint in this action, on June 25, 2012).

in Part III.A.3. of this Decision and Order.  As a result, again, the Court denies that alternative motion without prejudice.

###### 5.    Claim Against All Hourly Defendants Alleging Race Discrimination Under N.Y. Exec. Law § 296

The legal standard that governs a race-discrimination claim under Section 296 (which is a codification of the New York Human Rights Law) is the same legal standard that governs a race-discrimination claim under Section 1981. *See Smith v. New Venture Gear, Inc.,* 00-CV-1151, 2008 WL 200015, at *4 (N.D.N.Y. Jan. 22, 2008) (Mordue, C.J.) ("The same legal standard is applied to claims of race discrimination under Title VII, section 1981, and New York's Human Rights Law."); *Uribe v. Kellogg's Snacks/Keebler, Inc.*, 05-CV-2959, 2009 WL 1098369, at *4 (S.D.N.Y. Apr. 22, 2009) ("In analyzing employment discrimination claims under Section 1981 and New York Executive Law § 296, courts use the same standard that applies in Title VII cases.").

As a result, Plaintiff's race-discrimination claim under Section 296 is dismissed for the same reasons that Plaintiff's race-discrimination claim under Section 1981 is dismissed. *See, supra,* Part III.A.3. of this Decision and Order.

###### 6.    Claim Against All Hourly Defendants Alleging Retaliation Under N.Y. Exec. Law § 296

As indicated above in Part III.A.5. of this Decision and Order, the legal standard that governs a retaliation claim under Section 296 is the same legal standard that governs a retaliation claim under Section 1981. *See Jones v. Rochester Inst. of Tech.*, 12-CV-6210, 2013 WL 3936464, at *8 (W.D.N.Y. July 30, 2013) ("[B]ecause claims under New York's Human Rights Law are governed by the same standards as those under federal Section 1981, this Court's analysis of Plaintiffs' retaliation claims will apply to both of these claims."); *Facey v. Equinox*

*Holdings, Inc.*, 09-CV-4411, 2013 WL 153696, at *6 (E.D.N.Y. Jan. 15, 2013) ("Whether asserted under Title VII, Section 1981, New York State Human Rights Law, or New York City Human Rights Law, claims alleging retaliation are analyzed under the same framework and according to the same basic standards. . . . The Court therefore analyzes Facey's retaliation claims together.").

As a result, Plaintiff's retaliation claim under Section 296 is dismissed for the same reasons that Plaintiff's retaliation claim under Section 1981 is dismissed. *See, supra,* Part III.A.3. of this Decision and Order.

### 7.    Claim Against All Hourly Defendants Alleging Hostile Work Environment Under N.Y. Exec. Law § 296

Again, the legal standard that governs a hostile-work-environment claim under Section 296 is the same legal standard that governs a hostile-work-environment claim under Section 1981. *See Jones*, 2013 WL 3936464, at *5 ("Because claims under New York's Human Rights Law are governed by the same standards as those under federal Section 1981, this Court's analysis of Plaintiffs' hostile work environment claims will apply to both of these claims."); *Jean-Louis v. Am. Airlines*, 08-CV-3898, 2010 WL 3023943, at *9 n.12 (E.D.N.Y. July 30, 2010) ("Hostile work environment claims under . . . § 1981 [and] NYSHRL . . . are . . . analyzed using the same standard.").

As a result, Plaintiff's hostile-work-environment claim against Defendants Whittaker, Scranton, Boniewski, Golab, Capron, and Tomassone under Section 296 is dismissed for the same reasons that Plaintiff's hostile-work-environment claim against Defendants Whittaker, Scranton, Boniewski, Golab, Capron, and Tomassone under Section 1981 is dismissed. *See, supra,* Part III.A.3. of this Decision and Order.  However, Plaintiff's hostile-work-environment

claim against Defendant Lanoue under Section 296 survives for the same reason that Plaintiff's

hostile-work-environment claim against Defendant Lanoue under Section 1981 survives.  *Id.*

### 8.    Other Claims Against Hourly Defendants

After carefully considering the matter, the Court dismisses any claims that Plaintiff is

attempting to assert against the Hourly Defendants under either Title VII or 42 U.S.C. § 1983, as

either abandoned by Plaintiff or unsupported by factual allegations plausibly suggesting a claim,

for the reasons stated in the Hourly Defendants' memoranda of law.  *See, supra,* Parts I.B.1. and

I.B.3. of this Decision and Order.

### B.    Management Defendants' Motion

### 1.    Claim Against Defendant General Electric Alleging Sexual Harassment Under Title VII

After carefully considering the matter, the Court dismisses this claim for the reasons

stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of

this Decision and Order.  To those reasons, the Court adds the following analysis.

### a.    Analysis Pursuant to Fed. R. Civ. P. 12(b)(6)

As an initial matter, Plaintiff has voluntarily abandoned any Title VII "pattern or

practice" sexual-harassment claim against Defendant General Electric.

With regard to the Management Defendants' failure-to-exhaust argument directed at that

portion of this claim arising from events occurring before October 11, 2009, Plaintiff argues that

this portion of her claim was reasonably related to the two charges that she filed with the EEOC.

The Court largely rejects that argument.  Neither of the charges to which Plaintiff refers asserts

factual allegations that could be reasonably expected to result in an EEOC investigation of the

conduct alleged in this portion of her claim.  (Dkt. No. 35, Attach. 7, at 7, 9, 21.)  Granted, those

charges resulted in such an investigation of the conduct related to "interpersonal issues" between Plaintiff and Defendant Lanoue in May 2009, which resulted in a corporate investigation and remedial action in June 2009. (Dkt. No. 35, Attach. 7, at 109-15.) However, that conduct and investigation regarded *racial* harassment, not sexual harassment. (*Id*.) As a result, Plaintiff's claim against Defendant General Electric alleging *sexual* harassment under Title VII is dismissed to the extent it arises from events occurring before October 11, 2009.

With regard to the Management Defendants' statute-of-limitations argument directed at that portion of this claim arising from events occurring before January 19, 2010, Plaintiff's opposition memorandum of law (liberally construed) argues that this portion of her claim is not time-barred, because the allegations are "relevant background evidence" in support of the timely portion of her claim. The Court rejects that argument. In addition to relying on the point of law cited by the Management Defendants regarding the continuing-violation theory, the Court relies on the related point of law that adducing "background evidence" to support a timely claim is quite different from asserting factual allegations plausibly suggesting a timely claim. The latter may (in and of itself) give rise to liability, while the former is "merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). As a result, Plaintiff's claim against Defendant General Electric alleging sexual harassment under Title VII is dismissed to the extent it arises from events occurring before January 19, 2010.

With regard to the Management Defendants' arguments regarding the litany of other asserted pleading defects in this claim (e.g., that the allegations are conclusory, vague, based merely on political differences, not based on personal knowledge, and not sufficiently imputed to Defendant General Electric), Plaintiff argues that she has alleged facts plausibly suggesting a sex

discrimination claim against Defendant General Electric under Title VII. Based on all of the factual allegations of the Amended Complaint, and the documents incorporated by reference in it and integral to it,[9] the Court must reject much of Plaintiff's argument.

The Court will not linger on the lack of factual allegations plausibly suggesting sexual harassment (as opposed to political disagreement) by the Hourly Defendants that was witnessed by Plaintiff. More important is the lack of factual allegations plausibly suggesting that, despite knowing of the alleged sexual harassment of Plaintiff by Frank Harris and/or Defendant Lanoue, Defendant General Electric failed to take appropriate action to stop it. The Court notes that, in response to Plaintiff complaints, supervisors (including two females) repeatedly met with Plaintiff, repeatedly conducted investigations, suspended Frank Harris and Defendant Lanoue without pay for a week, gave Harris and Lanoue a Final Written Warning, separated Plaintiff and Harris, and separated Plaintiff and Lanoue. Similarly lacking are factual allegations plausibly suggesting that any tangible employment action taken against Plaintiff was based on Plaintiff's gender. The Court notes that Plaintiff's reassignment (which was remedial in nature, was caused by the inability to reassign Defendant Lanoue, and did not result in any significantly different responsibilities, pay or overtime eligibility to Plaintiff) was effected by supervisors (including two females) based on Plaintiff's interaction with another female employee. The Court notes also that Plaintiff's termination was not at all based on her gender or sex (but events in which she repeatedly and/or publicly called supervisors racist with no factual support).

_____

[9]    The Court notes also that the records relied on by the Management Defendants in making their argument (such as various of Plaintiff's administrative and company complaints, and the resulting investigations and decisions) either were incorporated by reference in, or are integral to, that Amended Complaint. (*See, e.g.,* Dkt. No. 4, at ¶¶ 13, 27, 33, 35-37, 39, 40, 46, 47, 49, 50, 53, 55, 56, 60, 79, 81, 82, 86.)

For all of these reasons, the Court dismisses this claim pursuant to Fed. R. Civ. P. 12(b)(6), except for that portion of this claim arising from Plaintiff's sexual harassment allegations concerning Defendant Lanoue based on events occurring before January 19, 2010.

### b.    Analysis Pursuant to Fed. R. Civ. P. 56

With regard to the Management Defendants' alternative argument that this claim should be dismissed for lack of admissible record evidence from which a rational fact finder could render a verdict for Plaintiff, Plaintiff premises her entire opposition to this argument on her argument that (a) entering summary judgment against a party is not appropriate unless that party is given a reasonable opportunity to contest the movant's evidence, and (b) here, no such reasonable opportunity has been given to Plaintiff in that discovery has not yet been completed. (Dkt. No. 40 at 38-39.)

Plaintiff's argument is based on Fed. R. Civ. P. 56(d).  As explained above in Part II.B. of this Decision, to obtain relief under Fed. R. Civ. P. 56(d), a litigant must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant has been unsuccessful in those efforts.

Here, the Court has difficulty concluding that Plaintiff has made this showing.  (*See generally* Dkt. Nos. 40, 41.)  In support of her request, Plaintiff has adduced the affidavit of her counsel swearing that eight broad categories of evidence "will assist plaintiff with meeting her burden of persuasion."  (Dkt. No. 41, at 2-6.)[10]  In addition, Plaintiff's counsel swears that the

---

[10]    Specifically, these eight broad categories of evidence are as follows: (1) the depositions and "unredacted personnel files and all other files" of the 13 individual Defendants; (2) the names of one or more officers, directors, managing agents or other persons, pursuant to Fed. R. Civ. P. 30(b)(6), to testify about Defendant General Electric's "hiring practices, Equal

"discovery requests are based upon the allegations in the amended complaint as well as the submissions of . . . [Defendants]." (*Id*. at 6.) Finally, her counsel swears that "Plaintiff has not had an opportunity to conduct discovery into these matters," rendering her "factually and intelligently" unable to respond to Defendants' Statements of Material Facts "through no fault of her own." (*Id*. at 2, 6.)

Granted, this is not simply a case in which discovery has not concluded, but one in which discovery has not commenced. However, "[t]he mere fact that no formal discovery has taken place does not preclude the filing of a motion under Rule 56." *Burke v. State Univ. of N.Y.*, 12-CV-1013, 2012 WL 5986548, at *4 (N.D.N.Y. Nov. 29, 2012) (McAvoy, J.); *accord, Levy v. Town of N. Hempstead,* 12-CV-1777, 2013 WL 5276559, at *1, n.1 (E.D.N.Y. Sept. 18, 2013); *Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp.2d 330, 346, n.51 (S.D.N.Y. 2009) (collecting cases). Rather, the standard under Fed. R. Civ. P. 56, including Fed. R. Civ. P. 56(d), still applies.

---

Employment Opportunity policy and investigations, overtime allocations, training protocols, workplace safety investigations, and employee certifications"; (3) copies of all documents sent or received by Defendant General Electric regarding any complaints of sex or race discrimination reported by Plaintiff, or reported by others on her behalf, to the Office of Equal Employment Opportunity; (4) copies of all documents sent or received by Defendant General Electric regarding any complaints of sex or race discrimination reported by other current or past employees of Defendant General Electric to the Office of Equal Employment Opportunity against any of the 13 individual Defendants; (5) copies of all documents sent or received by Defendant General Electric regarding any complaints of sex or race discrimination reported by other current or past employees of Defendant General Electric to the Office of Equal Employment Opportunity or other government agencies between January 1, 2008, and December 4, 2012; (6) copies of all documents sent or received by the Management Defendants with regard to any lawsuits filed and settled in state or federal courts in New York State, or alternative dispute resolution sessions, alleging sex and race discrimination by current or past employees between January 1, 2008, and December 4, 2012; (7) copies of all documents sent or received by Defendant General Electric regarding employees–"segmented by sex and race"–who received either overtime or "training" between January 1, 2008, and December 4, 2012; and (8) copies of all documents sent by Defendant General Electric to the EEOC, United States Department of Labor and/or Office of Federal Contract Compliance Programs, or received from Defendant General Electric from those agencies, between January 1, 2008, and December 4, 2012. (Dkt. No. 41, at 2-6.)

Pursuant to the standard governing requests for relief pursuant to Fed. R. Civ. P. 56(d), the Court finds that there are essentially two problems with the vague and conclusory assertions by Plaintiff's counsel: Plaintiff's counsel does not identify either the specific *facts* he seeks within the depositions or documents listed, or (more importantly) how those facts are *reasonably expected* to create a genuine issue of material fact. (*See generally* Dkt. Nos. 40, 41.) These omissions are glaring when one considers that the Management Defendants have been rather forthcoming in their creation of the record on their motion for summary judgment, adducing 1,128 pages of documents. (Dkt. Nos. 35, 36.) Indeed, many of the 1,128 pages of documents adduced by the Management Defendants were already within Plaintiff's own custody or control before the filing of that motion, having been (a) created or received by Plaintiff in the course of her employment, or (b) created or received by her during her administrative proceedings. (*Id*.)

Despite these facts, without explanation, Plaintiff fails to controvert the facts asserted in the Management Defendants' Statement of Material Facts through her declaration, the declaration of her co-worker Judy Bennett, the declaration of her co-worker Jeffrey Walton, other company or administrative documents in her possession, or other photographs she had taken. (*See generally* Dkt. Nos. 40, 41.)[11] Rather, Plaintiff's counsel has made the strategic and perilous decision to respond to the Management Defendants' motion for summary judgment not with evidence in Plaintiff's custody or control but with merely a vague and conclusory Fed. R. Civ. P. 56(d) declaration.

---

[11]    The Court presumes that at least these minimal facts were in Plaintiff's custody or control, or her counsel would not have had a good-faith basis to assert the corresponding factual allegations (especially without a qualification "upon information or belief") in Plaintiff's Amended Complaint.

Of course, a party's Fed. R. Civ. P. 56(d) request is undermined to the extent she could oppose a summary judgment motion through the submission of a declaration or affidavit. *See, e.g., Lenart v. Connerly*, 129 F.3d 607, at *3 (5th Cir. 1997) (affirming district court's denial of request for continuance under former version of Rule 56[d] where non-movant could have submitted, but chose not to submit, his own affidavit "in opposition to the summary judgment motion"); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (recognizing that, instead of requesting a continuance under former version of Rule 56[d], a non-movant could have submitted "one or more" affidavits of other individuals supporting his claim); *Smith v. Milwaukee Housing Assistance Corp.*, 114 F.3d 1192, at *1 (7th Cir. 1997) (recognizing that, instead of requesting a continuance under former version of Rule 56[d], a non-movant could submit "his own affidavit refuting statements contained in [the movant's" affidavit).

It bears noting that an unsuccessful Fed. R. Civ. P. 56(d) request does not afford a non-movant with a second chance to adduce evidence (within her custody or control) in opposition to a motion for summary judgment. *See Ins. Co. of State of Pa. v. Nat'l Fire & Marine Ins. Co.*, 11-CV-2033, 2013 WL 3070616, at *4 (D. Nev. June 17, 2013) ("That National Fire made the strategic decision to rely solely on its Rule 56(d) Motion rather than filing a response to the Motion for Partial Summary Judgment does not mean it was deprived of due process."); *SG Industries, Inc. v. RSM McGladrey, Inc.*, 10-CV-11119, 2011 WL 6090247, at *10, n.5 (E.D. Mich. Dec. 7, 2011) ("[T]he content of the [Plaintiff's] motion [pursuant to Rule 56(d)], even if it had been supported by an affidavit, does not establish good cause for deferral [of a decision on the Defendant's motion for summary judgment]. Plaintiff's failure to obtain the necessary expert testimony was the result of its own calculated decision. Given that Rule 56(d) is not intended to shield counsel who are dilatory, . . . it is certainly not designed to provide an avenue for relief

where a party's own strategy has deprived it of information with which to oppose summary judgment.") (internal quotation marks and citation omitted).

To the extent that there may conceivably exist some material evidence not currently in Plaintiff's custody or control, her counsel's failures (i.e., to specify the facts within that evidence and how those facts are reasonably expected to create a genuine dispute of material fact) transform her request into a fishing expedition in order to determine if Plaintiff has a claim–an endeavor that is prohibited. *Gene Codes Forensics, Inc. v. City of New York*, 812 F. Supp.2d 295, 308 (S.D.N.Y. 2011) ("[T]he law is very clear that you cannot use discovery to find out whether you have a claim."); *see also DePaola v. City of New York*, 13-CV-0315, 2013 WL 5597465, at *5 (S.D.N.Y. Oct. 9, 2013) (finding, on a pre-discovery motion for summary judgment, that "[a]bsent a connection between the facts sought and the discovery to be conducted, plaintiff's general assertions about the need for discovery amount to the kind of fishing expedition that is not permitted by Rule 56(d) as a means to defeat summary judgment"). To disregard the Management Defendants' motion for summary judgment (which they obviously incurred significant effort to file), permit plenary discovery based on an unspecified need, and require the Management Defendants to file a second motion for summary judgment would frustrate the purpose of judicial efficiency (not to mention subject the Management Defendants to injustice).

Under the circumstances, the Court rejects Plaintiff's Fed. R. Civ. P. 56(d) challenge, and accepts the factual assertions in the Management Defendants' Statement of Material Facts, and their alternative ground for dismissal.[12] In particular, the Court finds that, based on the

---

[12]     The Court notes that it has painstakingly checked the relevant portions of the Management Defendants' Statement of Material Facts, and found that they are indeed supported

undisputed material facts, no rational fact finder could conclude that, despite knowing of the *sexual* harassment of Plaintiff by Defendant Lanoue, Defendant General Electric *failed* to take appropriate action to stop it.  The Court similarly finds that, based on the undisputed material facts, no rational fact finder could conclude that any tangible employment action taken against Plaintiff was based on her *gender*.

While the 608 paragraphs of the Management Defendants' Statement of Material Facts contain numerous undisputed facts supporting this finding, the following facts are particularly noteworthy: (1) during the time in question, Defendant General Electric had an Integrity Policy prohibiting sexual discrimination, a Fair Employment Practices adopting a zero-tolerance policy against sexual harassment, and a Workplace Violence Policy prohibiting workplace violence (Dkt. No. 38, at ¶¶ 3-4, 7, 8, 10, 11, 16); (2) following the receipt of a complaint by Plaintiff about offensive material placed by Defendant Lanoue on her locker, supervisors (including a female) met Plaintiff on June 5, 2009, and interviewed Defendant Lanoue on June 18, 2009 (*id*. at ¶¶ 90, 97); (3) supervisors (including two females) launched an investigation on or about June 20, 2009, and conducted a walk-through of the locker room on or June 22, 2009 (*id*. at ¶¶ 104, 106, 117); (4) despite the fact that supervisors found no evidence that Defendant Lanoue's actions targeted Plaintiff, a supervisor directed Defendant Lanoue to take down upsetting materials (regarding President Obama) from her locker, which she promised not to post again (*id*. at ¶¶ 498, 107, 108, 110); (5) Plaintiff was given a supervisor's cell phone number in case

---

by accurate record citations.  In addition, the Court has kept watchful eye for evidence of a dispute of material fact, while reviewing other portions of the record.   The Court need not, and shall not, go any further.  It is not the duty of a congested district court to *sua sponte* scour 1,128 pages of record evidence for a dispute of material fact.  *Stephenson Equip. v. ATS Specialized, Inc.*, 10-CV-1517, 2013 WL 4508444, at *8 & n.12 (N.D.N.Y. Aug. 23, 2013) (Suddaby, J.).

she could not reach another supervisor regarding any future issues, and she again met with a

female supervisor, on June 24, 2009, and August 25, 2009 (*id*. at ¶¶ 111, 113, 119); (6) following

their receipt of a complaint from Defendant Lanoue against Plaintiff, supervisors launched an

investigation in early October 2009, which included the taking of sworn statements and

conducting of interviews, including interviews of Defendant Lanoue and Plaintiff in November

2009 (*id*. at ¶¶ 125, 126, 127, 128, 130); (7) following the investigation, supervisors (including

two females) issued a report recommending that the company take corrective actions, including

the separation of Defendant Lanoue and Plaintiff, and the implementation of a new policy

regarding the posting of inappropriate materials (*id*. at ¶¶ 133, 134, 135, 136); (8) Defendant

Lanoue was suspended without pay for one week in December of 2009 or January of 2009, and

given a Final Written Warning on January 6, 2010 (*id*. at ¶¶ 137, 138, 139); (9) in response to a

complaint by Plaintiff that Frank Harris "grab[bed] his crouch in an obscene gesture toward

[her]" on January 6, 2010, a female supervisor conducted an investigation into the allegation,

interviewing both Plaintiff and Mr. Harris (*id*. at ¶¶ 147, 151); (10) even though Mr. Harris

denied the allegation, Defendant General Electric reassigned him to a part of the campus away

from Plaintiff (*id*. at ¶¶ 147, 151, 152); (11) moreover, to address Plaintiff's refusal to work in

the presence of Defendant Lanoue due to asserted safety concerns, supervisors (including two

females) separated Plaintiff and Lanoue in February 2010, with Plaintiff retaining her status as a

D21 Inspector with no loss of pay or overtime eligibility, and with the same one-over-one

manager and opportunities for job advancement (*id*. at ¶¶ 136, 152-171, 325, 327, 504); (12) at

the time, there was no other available positions to which to reassign Defendant Lanoue, due to

her lack of qualifications and the company's collective-bargaining agreement (*id*. at ¶ 161); (13)

in June 2010, supervisors investigated Plaintiff's complaint that she had been "stalked" by

Defendant Lanoue, resulting in a finding of no criminal intent (*id*. at ¶¶ 208-211); (14) in September 2010, supervisors investigated Plaintiff's complaint regarding Defendant Lanoue's asserted "the woman of color" comment, which Lanoue (and others allegedly present) denied (*id*. at ¶¶ 219-221); (15) in November 2010, supervisors recorded Plaintiff's complaint that she and Defendant Lanoue "almost bumped into each other" in their cars (*id*. at ¶ 225); (16) after the company complied with a subpoena to provide security video footage of the scene of another driving incident in August 2011, Plaintiff's criminal complaint against Defendant Lanoue for reckless driving was dismissed (*id*. at ¶ 410); and (17) on September 20, 2011, following the issuance of a Final Written Warning (dated July 13, 2011), supervisors terminated Plaintiff based on (a) her refusal to perform an assignment and comment "get your white boys to do it" during fourth fiscal week of 2011, (b) her unsupported accusation (in the presence of an employees and a customer) on March 2, 2011, that she had been called a "n----" at work, (c) her resistance to work and her repeatedly, publically and argumentatively accusing her supervisor of being racist with no factual support on July 12, 2011, and (d) her calling a co-worker and a supervisor a racist with no factual support on September 14, 2011 (*id*. at ¶¶ 33, 257, 261-264, 377-382, 389, 392, 421-427).

For all these reasons, in the alternative, the Court dismisses this claim pursuant to Fed. R. Civ. P. 56, including (but not limited to) that portion of this claim arising from Plaintiff's sexual harassment allegations concerning Defendant Lanoue based on events occurring before January 19, 2010.

### 2.    Claim Against Defendant General Electric Alleging Race Discrimination Under Title VII

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.   To those reasons, the Court adds the following analysis.

### a.    Analysis Pursuant to Fed. R. Civ. P. 12(b)(6)

As an initial matter, Plaintiff has voluntarily abandoned any Title VII "pattern or practice" race-discrimination claim against Defendant General Electric.

With regard to the Management Defendants' failure-to-exhaust argument directed at that portion of this claim arising from events occurring before October 11, 2009, the Court rejects that argument for the reasons stated above in Part III.B.1. of this Decision and Order.

With regard to the Management Defendants' statute-of-limitations argument directed at that portion of this claim arising from events occurring before January 19, 2010, the Court accepts that argument for the reasons stated above in Part III.B.1. of this Decision and Order.

With regard to the Management Defendants' arguments regarding the litany of other asserted pleading defects in this claim (e.g., that the allegations are conclusory, vague, based merely on political differences, not based on personal knowledge, and not sufficiently imputed to Defendant General Electric), Plaintiff argues that she has alleged facts plausibly suggesting a race-discrimination claim against Defendant General Electric under Title VII.  Based on all of the factual allegations of the Amended Complaint, and the documents incorporated by reference in it and integral to it, the Court must reject Plaintiff's argument.

Again, the Court will not linger on the lack of factual allegations plausibly suggesting race discrimination (as opposed to political disagreement) by the Hourly Defendants that was

witnessed by Plaintiff.  More important is the lack of factual allegations plausibly suggesting that, despite knowing of any alleged race discrimination against Plaintiff by the Hourly Defendants, Defendant General Electric failed to take appropriate action to stop it.  The Court notes that, in response to Plaintiff complaints, supervisors repeatedly met with Plaintiff, repeatedly conducted investigations, suspended Frank Harris and Defendant Lanoue without pay for a week, gave Harris and Lanoue a Final Written Warning, separated Plaintiff and Harris, and separated Plaintiff and Lanoue.

Similarly lacking are factual allegations plausibly suggesting that the reassignment of Plaintiff by Defendant General Electric was based on Plaintiff's race: based on the *factual* allegations of the Amended Complaint, and the documents incorporated by reference in it and integral to it, Plaintiff's reassignment was remedial in nature, was caused by the inability to reassign Defendant Lanoue, was accompanied by a reassignment of Frank Harris, and did not result in any significantly different responsibilities, pay or overtime eligibility to Plaintiff.

Finally, also lacking are factual allegations plausibly suggesting that the termination of Plaintiff by Defendant General Electric was based on Plaintiff's race: based on the *factual* allegations of the Amended Complaint, and the documents incorporated by reference in it and integral to it, Plaintiff's termination was for insubordination, including her refusal to work and/or her baseless harassment of co-workers and supervisors.

The Court notes that documentation regarding Plaintiff's complaints. as well as company and union investigations and reports regarding those complaints, are incorporated by reference and/or integral to the Amended Complaint.

For all of these reasons, the Court dismisses this claim pursuant to Fed. R. Civ. P. 12(b)(6).

**b.**     **Analysis Pursuant to Fed. R. Civ. P. 56**

For the same reasons as stated above in Part III.B.1.b. of this Decision and Order, the Court rejects Plaintiff's Fed. R. Civ. P. 56(d) challenge, and accepts the factual assertions in the Management Defendants' Statement of Material Facts.

The Court notes that, in support of their motion, the Management Defendants have adduced company-investigation records and administrative-proceeding records regarding the reasons for, and nature of, Plaintiff's reassignment (which followed Frank Harris' reassignment and a determination that Defendant Lanoue could not be reassigned due the lack of an alternative available position for her). (*See, e.g.,* Dkt. No. 35, Attach. 7, at 52-56, 101-102; Dkt. No. 36, Attach. 4. at 58-69; Dkt. No. 36, Attach. 5, at 9-10; Dkt. No. 36, Attach. 7, at 29.) However, Plaintiff has not adduced a declaration showing how her reassignment was based on her race, or even swearing that it was based on her race (despite the fact that this information was in her custody or control). Rather, all the Court is left with is Plaintiff's unverified and conclusory *allegation* that her reassignment was based on her race. (Dkt. No. 4, at ¶¶ 47, 55, 82.)

Similarly, the Management Defendants have adduced administrative-proceeding records and company-investigation records regarding Plaintiff's overtime as compared to that of four other "first shift operators" (i.e., Paul DeFilippo, Ed Baron, Vincent Fusco, and Mario Facci) from 2009 through 2011. (*See, e.g.,* Dkt. No. 35, Attach. 7, at 52-56; Dkt. No. 35, Attach. 7, at 105; Dkt. No. 36, Attach. 7, at 16-17, 19-22; Dkt. No. 35, Attach. 5, at 57; Dkt. No. 35, Attach. 6, at 4.) However, Plaintiff has not adduced a declaration establishing how Defendant Boswell "created a fraudulent overtime list . . . favoring the Caucasian Male employees" on December 16, 2010, or even swearing that he in fact created such a list; again, all the Court is left with is

her unverified *allegation* that he created such a list.  (Dkt. No. 4, at ¶ 65.)  Moreover, Plaintiff

has not adduced a declaration identifying the names of the similarly situated male Caucasian

employees who allegedly received more overtime that she did (despite the fact that this

information was in her custody or control).  (*Id.*, at ¶¶ 65, 83, 84.)

Furthermore, the Management Defendants have adduced company-investigation and

union-investigation records regarding Plaintiff's work assignments as compared to similarly

situated Caucasian males.  (*See, e.g.,* Dkt. No. 36, Attach. 3, at 6-9; Dkt. No. 36, Attach. 5, at 9-

10, 14, 20, 23, 30, 33-35, 37-38, 40-42, 44-45; Dkt. No. 36, Attach. 6. at 43; Dkt. No. 36, Attach.

7, at 29; Dkt. No. 36, Attach. 8, at 27-30.)  However, Plaintiff has not adduced a declaration

swearing that Defendant Boswell assigned her "janitorial work" on June 9, 2011, as alleged in

her Amended Complaint.  (Dkt. No. 4, at ¶ 76.)  Moreover, Plaintiff has not adduced a

declaration identifying the names of the similarly situated male Caucasian employees who

allegedly received preferential work assignments and/or conditions as compared to her  (despite

the fact that this information was in her custody or control).  (*Id.*, at ¶¶ 76, 85.)

Finally, the Management Defendants have adduced company correspondence and

investigation records regarding the events leading up to her termination.  (*See, e.g.,* Dkt. No. 36,

Attach. 3, at 4-9; Dkt. No. 36, Attach. 6, at 38-39, 41; Dkt. No. 36, Attach. 7, at 27-29, 61, 63-

64.)  However, Plaintiff has not adduced a declaration denying that she was insubordinate or that

the events relied on by the Management Defendants happened differently than the way they

assert  (despite the fact that this information was in her custody or control).  Rather, again, all the

Court is left with is Plaintiff's unverified and conclusory *allegation* that she was terminated

based on her race.  (Dkt. No. 4, at ¶¶ 17, 93, 102.)

For all of these reasons, in the alternative, the Court dismisses this claim pursuant to Fed. R. Civ. P. 56.

### 3. Claim Against Defendant General Electric Alleging Retaliation Under Title VII

After carefully considering the matter, the Court dismisses this claim, except for the portion of this claim that arises from Plaintiff's termination, for the reasons stated in the Management Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. To those reasons, the Court adds the analysis set forth above in Parts III.B.1. and III.B.2. of this Decision and Order, as well as the following analysis.

With regard to the sufficiency of the portion of this claim that arises from Plaintiff's reassignment, Court finds that this portion of the claim is deficient for each of two alternative reasons: (1) there is insufficient evidence from which a rational fact finder could conclude that Plaintiff's reassignment amounted to adverse action; and (2) in any event, there is insufficient evidence from which a rational fact finder could conclude that any such adverse action was caused by her prior complaints.

With regard to the first reason, the Court notes that Plaintiff's reassignment did not result in any significantly different responsibilities, pay or overtime eligibility (or even work assignments less favorable than those given to similarly situated individuals). Under the circumstances, Plaintiff's reassignment was not sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination.

With regard to the second reason, the Court notes that Plaintiff's reassignment was not accompanied by evidence of racial animus such as criticism of Plaintiff's performance in ethnically degrading terms, invidious comments about others in Plaintiff's protected group, or treatment of similarly situated employees not in the protected group more favorably. While it is

true that Defendant Lanoue was not reassigned, that fact was due to her lack of qualifications and the company's collective-bargaining agreement: simply stated, Lanoue, who had a different job than did Plaintiff, was not *situated similarly* to Plaintiff. In any event, it can hardly be concluded that, by not being reassigned, Defendant Lanoue was treated *more favorably* than was Plaintiff: Lanoue was suspended for a week without pay and issued a Final Written Warning.

The Court also notes that, while Plaintiff's reassignment on February 26, 2010, occurred approximately four-and-a-half months after Plaintiff made additional complaints against Defendant Lanoue on or about October 3, 2009, such a temporal proximity is insufficient evidence of causality to establish a prima facie case. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases finding temporal proximity of three or four months to be insufficient). Moreover, even setting aside this temporal remoteness, Plaintiff was not the only party to complain: Defendant Lanoue filed two complaints against Plaintiff. Indeed, Defendant Lanoue's complaints–filed or about October 6, 2009, and on or about November 5, 2009– occurred nearer to Plaintiff's reassignment than did Plaintiff's complaints. Simply stated, based on the current record, Plaintiff's reassignment occurred due to the need to separate her and Defendant Lanoue, and the fact that there were no other available positions to which to reassign Lanoue. Any conclusion that Plaintiff's reassignment was caused by her complaints is entirely speculative.

With regard to the sufficiency of the portion of this claim that arises from Plaintiff's termination, the Court acknowledges that this issue presents a close question, given that Plaintiff's accusations of racism were interwoven with the events giving rise to her asserted insubordination.

Granted, it appears that most courts that have addressed the issue have rejected the actionability of terminating an African-American employee for insubordination where the employee has (outside a formal proceeding) orally accused his or her supervisor of being racist without substantiation–particularly where the accusation was made in the presence of other employees. *See, e.g., Weber v. Gainey's Concrete Prods., Inc.,* 159 F.3d 1356, at \*1-4 (5th Cir. 1998) (affirming district court decision granting judgment as matter of law to employer that had terminated Black employee for insubordination after he had, *inter alia*, falsely accused a supervisor of being a racist in the presence of other employees); *E.E.O.C. v. Goodwill Indus. of Sw. Okla.*, 11-CV-1043, 2013 WL 5460819, at \*2, 7-8 (W.D. Okla. Sept. 30, 2013) (granting summary judgment to employer that had terminated Black employee for insubordination after she had, *inter alia*, accused a supervisor and persons of being racist without substantiation); *Hunt v. Riverside Transp., Inc.*, 11-CV-2020, 2013 WL 1497805, at \*3, 13 (D. Kan. Apr. 11, 2013) (granting summary judgment to employer that had terminated Black employee for insubordination after he had, *inter alia*, unjustifiably and "disruptively" accused a supervisor of being racist); *Jarvis v. Enter. Fleet Servs. and Leasing*, 07-CV-3385, 2010 WL 1068146, at \*2, 7, 16 (D. Md. March 17, 2010) (granting summary judgment to employer that had terminated Black employee for insubordination after he had, *inter alia*, "engaged in a persistent pattern of accusing anyone who does not agree with you of racism where there are no facts to establish that race was an issue").

However, here, even setting aside the oral charges of racism against her supervisors in public, the sheer number and duration of Plaintiff's formal complaints (at least initially), coupled with a *hint* of evidence that at least some supervisors may have been growing somewhat weary

of those complaints,[13] gives the Court pause.  While the Court has little difficulty concluding that Plaintiff had (when she responded to the Management Defendants' motion for summary judgment) in her custody or control evidence sufficient to controvert the others facts asserted by the Management Defendants, the Court concludes that Plaintiff should be afforded the opportunity to conduct discovery before deciding this portion of the Management Defendants' motion for summary judgment.

The Court notes that this finding is not inconsistent with its prior findings that Plaintiff had custody or control over sufficient information to challenge other admissible record evidence adduced by the Management Defendants.  A court may grant in part, and deny in part, a request to stay a motion for summary judgment in order to conduct discovery, under Fed. R. Civ. P. 56(d).  *See, e.g., Sahu v. Union Carbide Corp.,* 04-CV-8825, 2010 WL 909074, at *2 (S.D.N.Y. March 15, 2010); *Freeman v. State of New York Dept. of Corr. Servs.*, 83-CV-2755, 1984 WL 728, at *3 (S.D.N.Y. Aug. 7, 1984).

For all of these reasons, the Court dismisses this claim, except for the portion of the claim that arises from her termination.  The Court denies that discrete portion of Defendant General Electric's motion for summary judgment only without prejudice.

---

[13]    (*See, e.g.,* Dkt. No. 36, Attach. 5, at 41 [attaching email message to Defs. Vavrasek and O'Gorman dated Oct. 12, 2010, which stated, "It appears we have an ideal opportunity to resolve the Yvonne Alex issue  . . . .," and then discussed the possibility of placing Plaintiff back in her original job assignment]; Dkt. No. 36, Attach. 6, at 17 [attaching email message from Manager Mark Sullivan dated Dec. 6, 2010, stating that he "asked [Plaintiff] to leave [his] office while she was complaining to him about being "part of a conspiracy" against her]; Dkt. No. 36, Attach. 8, at 27 [attaching email message from Defendant Scully dated July 12, 2011, which stated that Scully "walked away" from Plaintiff while Plaintiff was complaining to her about being a racist].)  The Court notes that it expresses no opinion regarding whether this evidence, in and of itself, would suffice to create a genuine dispute of material fact on a second motion for summary judgment filed on this issue by the Management Defendants.

### 4.    Claim Against Defendant General Electric Alleging Hostile Work Environment Under Title VII

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.   To those reasons, the Court adds the analysis set forth above in Parts III.B.1. and III.B.2. of this Decision and Order.

The Court notes that–based on an analysis pursuant to either Fed. R. Civ. P. 12(b)(6) or Fed. R. R. Civ. P. 56–Defendant General Electric cannot reasonably be found to have failed to provide to Plaintiff a reasonable avenue for complaint, or to have failed to take appropriate remedial action based on the facts that it knew or reasonably should have known.  The Court notes also that, following Defendant General Electric's suspension of Defendant Lanoue, its separation of Plaintiff and Harris, and its separation of Plaintiff and Lanoue, Plaintiff's sexual harassment complaints against Lanoue and Harris (none of which was found to be substantiated) decreased in number and became more vague in nature.  Finally, the Court notes that, in addition to keeping an open line of communication with Plaintiff regarding complaints of racial discrimination, Defendant General Electric rather promptly investigated those complaints and took appropriate action.

### 5.    Claim Against All Management Defendants Alleging Race Discrimination Under 42 U.S.C. § 1981

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  To those reasons, the Court adds the analysis set forth above in Part III.B.2. of this Decision and Order.  The Court notes that all supervisors whose actions allegedly

62

gave rise to this claim were named as Defendants in the Amended Complaint.  (*See generally* Dkt. No. 4.)

### 6.    Claim Against All Management Defendants Alleging Retaliation Under 42 U.S.C. § 1981

After carefully considering the matter, the Court dismisses this claim, except for the portion of this claim that is asserted against Defendants General Electric, Vavrasek and O'Gorman arising from her termination, for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  To those reasons, the Court adds the analysis set forth above in Part III.B.3. of this Decision and Order. In addition, the Court adds the following analysis.

As an initial matter, the Court notes, again, that all supervisors whose actions allegedly gave rise to this claim were named as Defendants in the Amended Complaint.  (*See generally* Dkt. No. 4.)

With regard to those supervisors who were personally involved in Plaintiff's termination, Plaintiff's letter of termination was sent by Defendant Vavrasek with copies sent to Jed Boswell, Eric Olson, and Jose Fernandez.  (Dkt. No. 36, Attach. 3, at 4-5.)  Defendant Vavrasek adduced a declaration swearing that it was Plaintiff's Cell Leader *James* "Jed" Boswell, not Defendant Facilitator *Richard* Boswell, who was involved in the decision to terminate Plaintiff.  (Dkt. No. 36, at ¶¶ 45, 46.)  While a reasonable fact finder might conclude that Defendant O'Gorman, as the Human Resources Manager, was also personally involved in the decision, it is entirely speculative as to how Defendants Jordan, Polukort, and Scully (who were front-line supervisors or "Facilitators") could have been personally involved in the decision, under the circumstances.

The Court notes that, despite being advised of this lack-of-personal-involvement argument (*see, e.g.,* Dkt. No. 37, at 31-34, 52; Dkt. No. 38, at ¶¶ 33), Plaintiff has not adduced a declaration establishing the personal involvement of Defendants Boswell, Jordan, Polukort, and Scully in the decision to terminate her (despite the fact that this information was in her custody or control).  Rather, again, all the Court is left with is Plaintiff's unverified and conclusory *allegation* of that fact.  (Dkt. No. 4, at ¶¶ 93, 123-127.)

After carefully considering the matter, the Court dismisses this claim, except for the portion of this claim that is asserted against Defendants General Electric, Vavrasek and O'Gorman arising from her termination.

### 7.     Claim Against All Management Defendants Alleging Hostile Work Environment Under 42 U.S.C. § 1981

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  To those reasons, the Court adds the analysis set forth above in Part III.B.4. of this Decision and Order.  Again, the Court notes that all supervisors whose actions allegedly gave rise to this claim were named as Defendants in the Amended Complaint.  (*See generally* Dkt. No. 4.)

### 8.     Claim Against All Management Defendants Alleging Sexual Harassment Under N.Y. Exec. Law § 296

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  To those reasons, the Court adds the analysis set forth above in Part III.B.1. of this Decision and Order.  Again, the Court notes that all supervisors whose actions allegedly gave rise to this claim were named as Defendants in the Amended Complaint.  (*See generally* Dkt. No. 4.)

### 9.      Claim Against All Management Defendants Alleging Race Discrimination Under N.Y. Exec. Law § 296

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.   To those reasons, the Court adds the analysis set forth above in Part III.B.5. of this Decision and Order.

### 10.      Claim Against All Management Defendants Alleging Retaliation Under N.Y. Exec. Law § 296

After carefully considering the matter, the Court dismisses this claim, except for the portion of this claim that is asserted against Defendants General Electric, Vavrasek and O'Gorman arising from her termination, for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.   To those reasons, the Court adds the analysis set forth above in Part III.B.6. of this Decision and Order.

### 11.      Claim Against All Management Defendants Alleging Hostile Work Environment Under N.Y. Exec. Law § 296

After carefully considering the matter, the Court dismisses this claim for the reasons stated in the Management Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.   To those reasons, the Court adds the analysis set forth above in Part III.B.7. of this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that the Hourly Defendants' motion to dismiss and/or for summary judgment (Dkt. No. 32) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, as described above in Part III.A. of this Decision and Order; and it is further

**ORDERED** that Management Defendants' motion to dismiss and/or for summary judgment (Dkt. No. 35) is **GRANTED in part** and **DENIED in part**, as described above in Part III.B. of this Decision and Order; and it is further

**ORDERED** that all claims asserted in Plaintiff's Amended Complaint (Dkt. No. 4) are **DISMISSED except** for the following six claims, which **SURVIVE** Defendants' motions:

(1) Plaintiff's hostile-work-environment claim against Defendant Lanoue under 42 U.S.C. § 1981;

(2) Plaintiff's hostile-work-environment claim against Defendant Lanoue under N.Y. Exec. Law § 296;

(3) Plaintiff's sexual-harassment claim against Defendant Lanoue under N.Y. Exec. Law § 296;

(4) the portion of Plaintiff's retaliation claim against Defendant General Electric under Title VII that arises from Plaintiff's termination;

(5) the portion of Plaintiff's retaliation claim against Defendants General Electric, Vavrasek and O'Gorman under 42 U.S.C. § 1981 that arises from Plaintiff's termination; and

(6) the portion of Plaintiff's retaliation claim against Defendants General Electric, Vavrasek and O'Gorman under N.Y. Exec. Law § 296 that arises from Plaintiff's termination.

The clerk is directed to terminate all defendants, except for Defendants Lanoue, General Electric, Vavrasek and O'Gorman; and it is further

**ORDERED** that the Hourly Defendants' motion for summary judgment (Dkt. No. 32) is denied only **WITHOUT PREJUDICE**; and it is further

**ORDERED** that the following portions of the Management Defendants' motion for summary judgment (Dkt. No. 35) are denied only **WITHOUT PREJUDICE**: (a) the portion seeking the dismissal of Plaintiff's retaliation claim against Defendant General Electric under Title VII arising from Plaintiff's termination; (b) the portion seeking the dismissal of Plaintiff's retaliation claim against Defendants General Electric, Vavrasek and O'Gorman under 42 U.S.C. § 1981 arising from Plaintiff's termination; and (c) the portion seeking the dismissal of Plaintiff's retaliation claim against Defendants General Electric, Vavrasek and O'Gorman under N.Y. Exec. Law § 296 arising from Plaintiff's termination; and it is further

**ORDERED** that Defendants file an answer to the Plaintiff's Complaint within 14 days of the date of this Memorandum-Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a) and this case is referred back to Magistrate Judge Christian F. Hummel for the setting of pretrial scheduling deadlines.

Dated: March 31, 2014
          Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

67