UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YVONNE W. ALEX,

                            Plaintiff,

v.                                                      1:12-CV-1021
                                                        (GTS/CFH)
GEN. ELEC. CO; GALE O'GORMAN, Human Res.
Manager; DIANE VAVRASEK, Human Res.
Representative/Union Relations; and MICHELE
LANOUE, Operator, Bucket Assembly,

                            Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

THE SANDERS FIRM, PC                                    ERIC SANDERS, ESQ.
  Counsel for Plaintiff
1140 Avenue of the Americas, 9th Floor
New York, NY 10036

JACKSON LEWIS P.C.                                      JOHN E. HIGGINS, ESQ.
  Counsel for Management Defendants
18 Corporate Woods Blvd., 3rd Floor
Albany, NY 12211

McNAMEE, LOCHNER, TITUS & WILLIAMS, P.C.                GLEN P. DOHERTY, ESQ.
  Counsel for Hourly Defendants
677 Broadway
Albany, NY 12207-2503

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment discrimination action filed by Yvonne W.

Alex ("Plaintiff") against General Electric Company and three of its employees, are the

following two motions: (1) a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed

by Defendant Michele Lanoue; and (2) a motion for summary judgment pursuant to Fed. R. Civ.

P. 56 filed by General Electric Company, Gale O'Gorman and Diane Vavrasek (the "Management Defendants"). (Dkt. Nos. 79, 81.) For the reasons set forth below, both motions are granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Amended Complaint

Generally, in her Amended Complaint, Plaintiff, an African-American woman who began working at Defendant General Electric in November 1981, alleges that, starting at some point in 2008 and continuing until her termination on September 20, 2011, she was repeatedly discriminated against based on her race by Defendant Lanoue and other co-workers at General Electric ("GE"), whose management either did not believe Plaintiff's complaints or simply refused to fully investigate those complaints, instead reassigning her and then terminating her. (Dkt. No. 4.) Because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail the remaining factual allegations of Plaintiff's Amended Complaint. Rather, the Court will refer the reader to the Amended Complaint in its entirety. (Id.)

Following the Court's Decision and Orders of March 31, 2014, and June 4, 2014, four claims remain in this action: (1) Plaintiff's hostile-work-environment claim against Defendant Lanoue under 42 U.S.C. § 1981; (2) the portion of Plaintiff's retaliation claim against Defendant General Electric under Title VII that arises from Plaintiff's termination; (3) the portion of Plaintiff's retaliation claim against Defendants General Electric, Vavrasek and O'Gorman under 42 U.S.C. § 1981 that arises from Plaintiff's termination; and (4) the portion of Plaintiff's retaliation claim against Defendants General Electric, Vavrasek and O'Gorman under N.Y. Exec. Law § 296 that arises from Plaintiff's termination. (Dkt. Nos. 48, 62.)

**B.      Parties' Briefing of Defendant Lanoue's Motion for Summary Judgment**

Generally, in her memorandum of law in chief, Defendant Lanoue asserts the following five arguments: (1) Plaintiff has failed to adduce admissible record evidence establishing that Lanoue's alleged conduct was related to Plaintiff's race as opposed to "political differences" over President Obama; (2) even if motivated by race, the five alleged incidents of enmity relied on by Plaintiff over a two-year period (i.e., Lanoue's posting of a depiction of a handgun on the top of her toolbox, Lanoue's operation of pass buckets knowing that Plaintiff was inspecting a turbine, Lanoue's unexplained presence in a locker room while Plaintiff was there, Lanoue's statement "the woman of color, I just want to grab her neck and slam her against the wall," and Lanoue's cutting in front of Plaintiff and forcing her to the side of a public road in an automobile) were sporadic and infrequent; (3) similarly, the aforementioned incidents of enmity were not sufficient severe or pervasive to alter the conditions of Plaintiff's employment, especially given that the racial epithet allegedly used by Lanoue (i.e., "N-----") was not used in Plaintiff's presence; (4) Lanoue's alleged conduct, which was unaccompanied by a single spoken word to Plaintiff, was not sufficiently physically threatening or humiliating; and (5) finally, Lanoue's alleged conduct did not unreasonably interfere with Plaintiff's work performance. (Dkt. No. 79, Attach. 1 [Def. Lanoue's Memo. of Law].)

Generally, in her opposition memorandum of law, Plaintiff asserts the following seven arguments: (1) Plaintiff's allegation that Defendant Lanoue attempted to intimidate her by posting depictions of firearms in the workplace and holding up pictures of shooting magazines as Plaintiff walked by are supported by Paragraphs 33 and 34 of the affidavit of Carol Adams; (2) Plaintiff's allegation that the picture of a handgun on the top of Defendant Lanoue's toolbox was

related to Plaintiff's race is supported by Paragraph 28 of the affidavit of Ms. Adams, because that paragraph states that Ms. Adams personally observed Lanoue post depictions of "Miss Piggy," which Ms. Adams interpreted as a reference to both Plaintiff and "fat Black woman stereotyping such as Aunt Jemima"; (3) Plaintiff's allegation that Defendant Lanoue intentionally pushed the button that caused the turbine to roll is supported by Plaintiff's deposition testimony Lanoue saw Plaintiff arrive at the turbine to perform an inspection; (4) Plaintiff's allegation that Defendant Lanoue's presence in the locker room was harassment is supported by the asserted point of law that "harassment is based on the victim's experience[,] not the intent of the harasser"; (5) Plaintiff's allegation that Defendant Lanoue's use of the term "woman of color" was derogatory is supported by Lanoue's "other related conduct," her decision not to simply use Plaintiff's name, and the fact that the assertedly analogous term "boy" is derogatory; (6) contrary to Defendant Lanoue's argument that there is no evidence that the automobile incident ever occurred, there is such evidence–Plaintiff's deposition testimony; and (7) contrary to Defendant Lanoue's argument conduct does not have to be accompanied by spoken words to be threatening of humiliating.   (Dkt. No. 88, Attach. 23 [Plf.'s Opp'n Memo. of Law].)

Generally, in her reply memorandum of law, Defendant Lanoue asserts the following four arguments: (1) Plaintiff has failed to show that there is a genuine issue of any material fact through her affidavit because it contains only (a) naked denials of her opponents' deposition testimony and (b) assertions that conflict with her own prior deposition testimony; (2) Plaintiff has failed to show that there is a genuine issue of any material fact through the late-blossoming affidavit of Carol Adams because the assertions in that affidavit (a) are conclusory and

speculative and contain conjecture, (b) lack the requisite specificity, (c) are inadmissible hearsay, (d) are not related to race, (e) contradict Plaintiff's prior deposition testimony and/or (f) are barred by the law-of-the-case doctrine (which effectively prohibits consideration of evidence regarding "Miss Piggy" as immaterial to Plaintiff's surviving claim against Defendant Lanoue); (3) in any event, Plaintiff has failed to show that there is a genuine issue of any material fact through the evidence she proffers because it does not demonstrate that she witnessed the events that Adams references, and therefore the events could not have affected *Plaintiff's* work environment; and (4) Defendant Lanoue's statement of material facts must be deemed admitted pursuant to Local Rule 7.1(a)(3), because (a) Plaintiff's responses are not supported by *specific* citations to the record but by broad citations to exhibits or depositions that fail to pinpoint where the support for the denial actually lies and/or (b) Plaintiff's responses improperly interject arguments or conclusions that are immaterial to a Rule 7.1 Response.  (Dkt. No. 94 [Def. Lanoue's Reply Memo. of Law].)

### C. Parties' Briefing of the Management Defendants' Second Motion for Summary Judgment

Generally, in their memorandum of law in chief, the Management Defendants assert the following three arguments: (1) Plaintiff cannot meet her initial burden of establishing a *prima facie* case of retaliation, because she cannot establish either (a) that her activity (of  repeatedly engaging in unprofessional, insubordinate, and disrespectful conduct toward her supervisors and other GE employees) was *protected* under any statute, or (b) that there was a *causal connection* between any such protected activity and her termination for insubordination and improper behavior at work; (2) in any event, GE has clearly met its resulting burden of adducing admissible record evidence of legitimate, non-discriminatory and non-retaliatory reasons for

terminating Plaintiff's employment (i.e., her violation of GE's Schenectady Plant work rules through her chronic inability to behave in a professional manner in the workplace, her consistent use of race-based identifiers against colleagues and co-workers, and her refusal to do work given to her by her supervisors multiple times, after she had been given a final written warning that such conduct would result in termination if it continued); and (3) finally, Plaintiff cannot meet her resulting burden of establishing that, "but for" her protected activity, she would not have been terminated (i.e., she cannot adduce admissible evidence that the Management Defendants' proffered reasons for terminating Plaintiff's employment were merely a pretext for retaliation). (Dkt. No. 81, Attach. 23 [Mgmt. Defs.' Memo. of Law].)

Generally, in her opposition memorandum of law, Plaintiff devotes only a page and a half to responding to the Management Defendants' arguments. (Dkt. No. 88, Attach. 23, at 25-26 [Plf.'s Opp'n Memo. of Law].) Liberally construed, Plaintiff's response to the Management Defendants' first argument (i.e., that she cannot establish a *prima facie* case of retaliation) argues that she can "easily demonstrate" the two elements in question (i.e., that her activity was protected and that there was a causal connection between it and her termination) through (1) "[a] detailed review" of the Management Defendants "Rule 56.1" Statement [sic] and accompanying exhibits, which evidence "the Sham Investigations undertaken in this matter," and (2) the lack of evidence suggesting that she was not "a long-time valued employee" before she started complaining about racial discrimination. (*Id.*) Moreover, Plaintiff's response to the Management Defendants' second and third arguments (i.e., that GE has articulated a legitimate, non-discriminatory and non-retaliatory reason for Plaintiff's termination, and that she cannot establish a "but for" causal connection between her protected activity and termination) advances the same argument. (*Id.*)

Generally, in their reply memorandum of law, the Management Defendants assert the following three arguments: (1) in her Local Rule 7.1 Response, Plaintiff has admitted and/or failed to controvert all of the properly supported facts asserted in the Management Defendants' Local Rule 7.1 Statement of Material Facts; (2) at the very least, the Management Defendants have met their modest initial burden on a motion for summary judgment (i.e., informing the Court of the basis for its motion and identifying those portions of the record demonstrating the absence of any genuine issue of material fact) and Plaintiff has effectively consented to the granting of that motion by failing to specifically respond to any of the three facially meritorious legal arguments asserted by the Management Defendants in their memorandum of law in chief; and (3) Plaintiff has not offered admissible evidence of "but for" causation or other admissible evidence of pretext regarding the reasons for terminating her, but merely the hearsay, speculative and/or conclusory assertions of herself and Carol Adams, in violation of Fed. R. Civ. P. 56(c)(4). (Dkt. No. 96 [Mgmt. Defs.' Reply Memo. of Law].)

D.     **Statement of Material Facts for Purposes of Defendant Lanoue's Motion**

Unless otherwise noted, the following facts were asserted by Defendant Lanoue and supported by an accurate record citation in her Rule 7.1 Statement and either expressly admitted by Plaintiff or denied without an accurate record citation in her Rule 7.1 Response. (*Compare* Dkt. No. 79, Attach. 11 [Def. Lanoue's Rule 7.1 Statement] *with* Dkt. No. 88, Attach. 25 [Plf.'s Rule 7.1 Response].)

<u>Background</u>

1.      Plaintiff, who is African-American, commenced employment with GE in 1981.

2.      Plaintiff held a variety of positions during her tenure with GE, including the position of D21 Inspector, which she held from 2000 until her termination on September 20, 2011.

3.      Defendant Lanoue, who is Caucasian, commenced employment with GE in 2000, and worked for the company until October 3, 2012.

4.      Defendant Lanoue held a variety of positions during her tenure with GE, including a position in Bucket Assembly, which she held from 2008 to her separation from employment.

5.      Throughout their overlapping tenures, Plaintiff and Defendant Lanoue spoke on only one occasion, at which time less than eight words were exchanged.

6.      This sole communication was about paperwork regarding Plaintiff's inspection of certain work performed by Defendant Lanoue.

7.      Sometime in 2009, Plaintiff perceived the development of a dispute between herself and Defendant Lanoue.[1]

---

[1]      (*Compare* Dkt. No. 79, Attach. 11, at ¶ 7 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 7 [Plf.'s Rule 7.1 Response, denying only a portion of the fact asserted and not supporting that denial with a specific citation to the record where a factual issue actually arises].) *See also Gianullo v. City of New York,* 322 F.3d 139, 140 (2d Cir. 2003) (holding that "unsupported assertions in a [Local Rule 56.1] statement must be disregarded"); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001) (noting that, "where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion"). For sake of brevity, the Court will not repeat these case cites below in the various footnotes to which they also apply.

8. According to Plaintiff, the basis for this alleged dispute was that she was a "strong supporter" of President Obama while at work, and Defendant Lanoue "made or participated in derogatory statements and remarks about the President and the First Lady."[2]

9. Also according to Plaintiff, this dispute transformed to differences between Plaintiff and Defendant Lanoue regarding Plaintiff's race,[3] even though Lanoue had a similar dispute with Judy Bennett (who was Caucasian).[4]

10. Finally, according to Plaintiff, this transformation took place in the absence of personal communications between herself and Defendant Lanoue.[5]

11. Plaintiff made various complaints with GE against Defendant Lanoue (as she did against numerous other GE employees); and, to the extent that Plaintiff's complaints against Lanoue overlap with the allegations at issue in this lawsuit, GE investigated the complaints but

---

[2]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 8 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 8 [Plf.'s Rule 7.1 Response, denying only a portion of the fact asserted and not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[3]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 9 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 25, at ¶ 9 [Plf.'s Rule 7.1 Response, denying only a portion of the fact asserted and not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[4]     (Dkt. No. 79, Attach. 7, at 30-31 [attaching pages "314" and "315" of Plf.'s Depo. Tr.].)

[5]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 10 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 10 [Plf.'s Rule 7.1 Response, denying only a portion of the fact asserted and not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

did not substantiate them.[6]

12.     Following her termination, Plaintiff commenced this action alleging eleven counts of discrimination and retaliation.

13.     In addition to suing her employer, GE, Plaintiff asserted claims against thirteen individuals, including her non-supervisory co-worker, Defendant Lanoue; Plaintiff sued Lanoue under eight separate claims.

14.     Defendant Lanoue moved to dismiss the lawsuit against her, and the Court dismissed all but one claim of that lawsuit, leaving a single cause of action under Section 1981 for hostile work environment based on race.[7]

15.     More specifically, the Court dismissed five (5) claims against Defendant Lanoue in its Decision and Order of March 31, 2014, and it dismissed two (2) claims against Lanoue in

---

[6]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 11 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 25, at ¶ 11 [Plf.'s Rule 7.1 Response, denying only a portion of the fact asserted and not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[7]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 14 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 25, at ¶ 14 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].) *See also Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit'"); *CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'"). For sake of brevity, the Court will not repeat these case cites below in the various footnotes to which they also apply.

its Decision and Order of June 4, 2014.[8]

16. In rendering its Decision and Order of March 31, 2014, the Court reviewed the 15 allegations made by Plaintiff against Defendant Lanoue.[9]

17. Following its review of these allegations, the Court concluded that most of the assertions were simply not relevant to Plaintiff's Section 1981 claim:

> Many of these factual allegations are of little significance to Plaintiff's Section 1981 hostile-work-environment claim against Defendant Lanoue. For example, the allegations regarding "Miss Piggy" and the making of "pig sounds" plausibly suggest slurs regarding Plaintiff's gender and/or weight, not her race. Moreover, the allegation regarding the "Jerk in the Box" t-shirt does not appear to plausibly suggest a racial slur. Furthermore, even if racial in nature, certain of slurs and epithets (e.g., regarding Michele Obama, Chief Justice Sotomayor) were not directed at Plaintiff. Similarly, while definitely racial in nature, certain of the other slurs and epithets (e.g., regarding Barrack Obama and Jeffrey Walton) were again not directed at Plaintiff.[10]

18. Furthermore, the Court concluded that it was possible, at least at that preliminary stage of the litigation, that the few remaining allegations supported a hostile work environment claim based on race:

---

[8] (*Compare* Dkt. No. 79, Attach. 11, at ¶ 15 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 25, at ¶ 15 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[9] (*Compare* Dkt. No. 79, Attach. 11, at ¶ 16 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 16 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[10] (*Compare* Dkt. No. 79, Attach. 11, at ¶ 17 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 17 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

However, more troubling is the fact that, based on Plaintiff's factual allegations, (1) the alleged conduct was often physically threatening in nature (involving an allusion to guns, "lying in wait," an expression of a violent desire, and near misses by a turbine blade and automobile), (2) the alleged conduct instilled in Plaintiff a fear of physical harm (of which she twice complained to superiors), and (3) the alleged conduct was accompanied by a racial animus toward Blacks in general, if not Plaintiff in particular (as "the woman of color"). While it is arguable that the conduct was motivated by a dislike of Plaintiff for non-racial reasons (e.g., based on her gender, weight, political views, or personality), it is also plausible that Defendant Lanoue's conduct was motivated by a dislike of Plaintiff based on her race.

For these reasons, the Court concludes that, liberally construed, Plaintiff's Amended Complaint has stated a hostile-work-environment claim against Defendant Lanoue under Section 1981. However, again, Plaintiff's Amended Complaint has failed to state a hostile-work-environment claim against the other Hourly Defendants.[11]

19.     The Court's Decision and Order of March 31, 2014, cited six allegations contained in the Amended Complaint that could possibly support a claim for hostile work environment based on race against Defendant Lanoue: (1) an allegation regarding the posting of depictions of guns; (2) an allegation regarding the holding up pictures of shooting magazines; (3) an allegation regarding the operation of pass buckets; (4) an allegation regarding the locker room; (5) an allegation regarding a "woman of color" comment; and (6) an allegation regarding an automobile incident.[12]

---

[11]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 18 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 18 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[12]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 19 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 19 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings]; *see also* Dkt. No. 48, at 34-37 [Decision and Order filed March 31, 2014].)

20.     These are the only allegations remaining in this lawsuit, because Plaintiff testified at her deposition that her Amended Complaint contains each and every allegation against Defendant Lanoue that supports her claim for a hostile work environment based on race.[13]

21.     Furthermore, at her deposition, Plaintiff elaborated on these six remaining allegations.[14]

22.     Generally, in so doing, Plaintiff admitted the following two facts: (1) certain of the incidents happened in a way different than that set forth in the Amended Complaint; and (2) certain of the allegations are not supported by admissible record evidence (other than her deposition testimony) but only conclusory statements, speculation and/or hearsay.[15]

---

[13]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 20 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with record citation, although mistakenly citing page "364" instead of pages "304" and "305" of Plf.'s Depo. Tr.] *with* Dkt. No. 88, Attach. 25, at ¶ 20 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting the denial with an accurate record citation, challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)  *See also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations").  For sake of brevity, the Court will not repeat this case cite below in the various footnotes to which it applies.

[14]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 21 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 21 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[15]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 22 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 22 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

<u>Alleged Posting of Depictions of Guns</u>

23.     Paragraph 30 of Plaintiff's Amended Complaint alleges as follows: "defendant MICHELE LANOUE and decedent Frank Harris would post depictions of firearms, shooting magazines, etc."

24.     At her deposition, Plaintiff testified that, while there was a picture of a handgun on the top of Defendant Lanoue's toolbox, Plaintiff never witnessed Lanoue personally post a depiction of a firearm or shooting magazine on a bulletin board or similar type of surface.[16]

25.     At her deposition, Defendant Lanoue testified that the picture of the handgun was there mostly because the handgun was "a Taurus brand," which she was interested in purchasing (given that her Zodiac sign was Taurus).[17]  While Plaintiff testified that the picture was accompanied by words to the effect of "I'll keep my guns . . . you can keep the change,"[18] no such slogan appears in a photograph of the top of Defendant Lanoue's toolbox;[19] however, a similar slogan appears in a photograph of the top of *Frank Harris'* toolbox.[20]

26.     Plaintiff testified that her wall "posting" allegation against Defendant Lanoue is

---

[16]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 23 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 23 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[17]     (Dkt. No. 88, Attach. 20 at 43-44 [attaching pages "42" and "43" of Lanoue's Depo. Tr.].)

[18]     (Dkt. No. 79, Attach. 7, at 92 [attaching page "376" of Plf.'s Depo. Tr., stating, "She had a gun picture and something about keep your guns I'll keep my change, or keep your change, whatever, something, one of those same statements about that"].)

[19]     (Dkt. No. 36, Attach. 4 at 48.)

[20]     (Dkt. No. 36, Attach. 4, at 49 [showing bumper stick stating, "I'll keep my guns, freedom & integrity. You can keep the 'change.'"].)

based on the fact that Lanoue had access to the area(s) in which certain postings appeared.[21]

27.     Plaintiff testified that numerous employees (including Frank Harris, Christopher Boniewski and Adam Shepherd) routinely hung up pictures of guns in their work areas.[22]

28.     Plaintiff testified in detail about how Frank Harris (deceased and not a party in this lawsuit) affixed pictures of guns and shooting magazines to the top and sides of his toolbox.

29.     As indicated above, according to Plaintiff, the top of Defendant Lanoue's toolbox contained a picture of a handgun, along with other pictures and stickers having nothing to do with handguns or shooting magazines.[23]

---

[21]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 24 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 24 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[22]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 26 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 26 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate record citation].) *See also Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make"); *cf.* N.D.N.Y. L.R. 7.1(a)(3) (providing that, to the extent that a non-movant desires to set forth any additional material facts that she contends are in dispute, she is required to do so in separately numbered paragraphs followed by specific record citations).  For sake of brevity, the Court will not repeat these case cites below in the various footnotes to which they also apply.

[23]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 28 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 28 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert

30.     Defendant Lanoue's toolbox was approximately four (4) feet high by two (2) feet wide.

31.     Plaintiff testified that, while other guns at work appeared after people realized that Barack Obama was going to win the presidency, Plaintiff does not know precisely when the picture of the handgun on top of Defendant Lanoue's toolbox appeared.[24]

32.     Plaintiff admits that no one forced her to look at the top of Defendant Lanoue's toolbox, and that it was not a requirement of her job to view the top of the toolbox, but claims that the toolbox provided a flat surface for her to use as a writing table.

33.     At her deposition, Plaintiff testified that her only evidence that the picture of the handgun on Defendant Lanoue's toolbox was directed at Plaintiff and/or was related to her race was the fact that (1) the picture appeared on top of the toolbox, (2) one or more unidentified co-workers told Plaintiff that Lanoue had referred to Plaintiff as "N-----" behind her back, and (3) Lanoue left gun magazines in Plaintiff's area.[25]

<u>Alleged Holding up Pictures of Shooting Magazines</u>

34.     Paragraph 31 of Plaintiff's Amended Complaint alleges as follows: "defendant MICHELE LANOUE and decedent Frank Harris would hold up pictures of shooting magazines

_____

a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate record citation].)

[24]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 30 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 30 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate record citation].)

[25]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 33 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 33 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

as she walked past them."

35.     Plaintiff's co-worker, Carol Adams, personally observed Defendant Lanoue hold up a picture of a shooting magazine as Plaintiff walked by in what Adams perceived was an attempt to intimidate [Plaintiff]."[26]  However, at her deposition, Plaintiff testified that she "never . . . saw [Defendant Lanoue] flash a picture of a gun at [her]."[27]

<u>Alleged Operation of Pass Buckets</u>

36.     Paragraph 38 of Plaintiff's Amended Complaint alleges as follows: "on or about September 8, 2009, defendant MICHELE LANOUE intentionally operated pass buckets one on stage one and one on stage three in an unsafe manner whereas [plaintiff] had to quickly move to avoid being struck on the head by the blade she was inspecting on the turbine."

37.     At her deposition, Plaintiff gave a somewhat different version of the "pass buckets" incident.[28]

38.     Plaintiff testified that, when she arrived at the turbine to perform an inspection, she was seen by Defendant Lanoue, who was the only operator present at the time.[29]

39.     Plaintiff testified that, without exchanging any words with Defendant Lanoue,

---

[26]     (Dkt. No. 88, Attach. 21, at ¶ 34 [Adams Affid.].)

[27]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 34 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 34 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[28]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 35 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 35 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a citation to the record where the purported factual issue actually arises].)

[29]     (Dkt. No. 79, Attach. 7, at 80-83 [attaching pages "364" through "367" of Plf.'s Depo. Tr.].)

Plaintiff proceeded to initiate her inspection work.[30]

40.　　Plaintiff testified that, while she was conducting her inspection, the turbine moved approximately twelve (12) inches.[31]

41.　　Plaintiff testified that, upon Plaintiff announcing her presence, a second operator (an unidentified male) appeared and informed Plaintiff that he was sorry and that he did not see her behind the turbine.[32]

42.　　While Plaintiff testified that Defendant Lanoue must have pushed the button that moved the turbine because the second operator did not arrive until after the turbine started to move, she also testified that she was out of sight of both Lanoue and the other operator when the turbine moved.[33]

43.　　Plaintiff testified that her head was not inside the turbine when it moved.[34]

44.　　Plaintiff testified that her only evidence that this incident was related to her race

---

[30]　　(*Compare* Dkt. No. 79, Attach. 11, at ¶ 39 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 39 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted].)

[31]　　(*Compare* Dkt. No. 79, Attach. 11, at ¶ 40 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 40 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted].)

[32]　　(*Compare* Dkt. No. 79, Attach. 11, at ¶ 41 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 41 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted].)

[33]　　(Dkt. No. 79, Attach. 7, at 81-86 [attaching pages "365" through "370" of Plf.'s Depo. Tr.].)

[34]　　(Dkt. No. 79, Attach. 7, at 85 [attaching page "369" of Plf.'s Depo. Tr.].)

was the fact that it happened, and that it was part of a "compilation" of behavior by Defendant

Lanoue toward Plaintiff (specifically, the fact that one or more unidentified co-workers told

Plaintiff that Lanoue had referred to Plaintiff as "N-----" behind her back, and the fact that

Lanoue had allegedly "stalk[ed]" Plaintiff in the locker room, tried to "run [Plaintiff] off the

road," and "offer[ed] to slam [Plaintiff's] head against a wall").[35]

### Alleged Locker Room Incident

45.     Paragraph 59 of Plaintiff's Amended Complaint alleges as follows: "on or about

June 22, 2010, defendant MICHELE LANOUE was lying in wait for [plaintiff] in the locker

room."

46.     At her deposition, Plaintiff gave a somewhat different version of the "locker

room" incident.[36]

47.     Plaintiff testified that, while she was in the locker room, Defendant Lanoue

walked into the locker room, went out of sight of Plaintiff, remained there for about five minutes,

and then exited the locker room without speaking to Plaintiff.[37]

48.     Plaintiff testified that she had no knowledge of Defendant Lanoue's activities in

---

[35]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 44 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 44 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[36]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 46 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 46 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[37]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 47 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 47 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

the locker room, and admitted that Lanoue might have been using the toilet, taking a shower or even putting on makeup.

49.     Plaintiff testified that her only evidence that this incident was related to her race was the fact that it happened: more specifically, when asked what evidence she had that the incident was related to her race, Plaintiff testified, "Because the harassment was based on my race and [Lanoue's] presence in that bathroom constituted harassment."[38]

50.     Indeed, Plaintiff testified that her only physical evidence that this incident even happened is a secret photograph taken by Plaintiff (from inside the locker room) of Defendant Lanoue talking on her phone as Lanoue left the locker room.[39]

<u>Alleged "Woman of Color" Comment</u>

51.     Paragraph 61 of Plaintiff's Amended Complaint alleges as follows: "on or about September 13, 2010, while attending a company meeting, [plaintiff] overheard defendant MICHELE LANOUE telling Vincent Fusco and David Barlett "the woman of color, I just want to grab her neck and slam her against the wall" referring to plaintiff."

52.     At her deposition, Plaintiff described an incident similar to the "woman of color" incident, but admitted that Defendant Lanoue made no reference to her by name when allegedly making this statement.[40]

---

[38]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 50 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 50 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[39]     (Dkt. No. 79, Attach. 7, at 60-62 [attaching pages "344" through "346" of Plf.'s Depo. Tr.].)

[40]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 52 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88,

53.     Plaintiff testified that she was not a participant in this alleged conversation, and was "maybe three or four feet" behind Defendant Lanoue when the statement was allegedly made.[41]

54.     Plaintiff testified that, generally, the phrase "woman of color" is a descriptive term, referring to anyone who is non-white.[42]

55.     Plaintiff testified that she was not the only African American (or non-white) woman working in Building 273 at the time that Defendant Lanoue allegedly made the statement.[43]

56.     Notwithstanding her reference to Vincent Fusco and David Barlett in her Amended Complaint, Plaintiff did not list either of these individuals as a witness or person likely to have discoverable information.

Alleged Automobile Incident

57.     Paragraph 87 of Plaintiff's Amended Complaint alleges as follows: "on or about August 16, 2011, while on her way to work, an individual believed to be defendant MICHELE

---

Attach. 25, at ¶ 52 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[41]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 53 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 53 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[42]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 54 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with record citation, although mistakenly citing page "355" instead of pages "360" and "361" of Plf.'s Depo. Tr.] *with* Dkt. No. 88, Attach. 25, at ¶ 54 [Plf.'s Rule 7.1 Response, admitting the fact asserted then asserting a non-responsive fact unsupported by the record].)

[43]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 55 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 55 [Plf.'s Rule 7.1 Response, admitting the fact asserted then asserting a non-responsive fact unsupported by the record].)

LANOUE sped up then suddenly cut off plaintiff in an attempt to cause her to lose control of the vehicle."

58.     At her deposition, Plaintiff testified that she filed a criminal complaint against Defendant Lanoue with respect to an incident allegedly taking place on a public road, but admits that no findings were ever made by the court, and that the judge dismissed the complaint.[44]

59.     Plaintiff testified that the judge dismissed the criminal complaint because "you guys got to the judge," apparently referring to GE.

60.     The sworn statement that Plaintiff submitted to the New York State Police differs somewhat from the allegation contained in her Amended Complaint.[45]

61.     Specifically, in her sworn statement to the New York State Police, Plaintiff states as follows: "I saw the truck next to me and on my left side. I am unable to say if the truck crossed into my lane at that time. I continued driving and I was beginning to prepare to pull to the side of the road and stop when the truck sped up and pulled in front of me."[46]

62.     At her deposition, Plaintiff testified that her only evidence that the incident was related to her race was the fact that one or more unidentified co-workers told Plaintiff that

---

[44]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 58 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 58 [Plf.'s Rule 7.1 Response, admitting the fact asserted].)

[45]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 60 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 60 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a citation to the record where the purported factual issue actually arises].)

[46]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 61 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 61 [Plf.'s Rule 7.1 Response, admitting the fact asserted].)

Defendant Lanoue had referred to Plaintiff as "N-----" behind her back.[47]

63.     Indeed, Plaintiff testified that she has no physical evidence that the incident even happened.[48]

64.     The six above-referenced alleged incidents occurred over approximately a two-year period.[49]

65.     Defendant Lanoue's alleged behavior does not consist of a single spoken word to Plaintiff.[50]

**B.      Statement of Material Facts for Purposes of the Management Defendants' Second  Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted by the Management Defendants and supported by an accurate record citation in their Rule 7.1 Statement and either expressly admitted by Plaintiff or denied without an accurate record citation in her Rule 7.1 Response.  (*Compare* Dkt. No. 81, Attach. 24 [Mgmt. Defs.' Rule 7.1 Statement] *with* Dkt. No. 88, Attach. 24 [Plf.'s Rule 7.1 Response].)

<u>Management Defendants' First Motion for Summary Judgment</u>

1.     On November 2, 2012, in lieu of an Answer, the Management Defendants timely

---

[47]     (Dkt. No. 79, Attach. 7, at 51-57 [attaching pages "335" through "341" of Plf.'s Depo. Tr.].)

[48]     (Dkt. No. 79, Attach. 7, at 52 [attaching page "336" of Plf.'s Depo. Tr.].)

[49]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 68 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 68 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

[50]     (*Compare* Dkt. No. 79, Attach. 11, at ¶ 75 [Def. Lanoue's Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 25, at ¶ 75 [Plf.'s Rule 7.1 Response, denying the fact asserted but not supporting that denial with a specific citation to the record where the purported factual issue actually arises].)

filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and/or for summary judgment pursuant to Fed. R. Civ. P. 56.

2.      In support of that motion, the Management Defendants filed a Declaration of John E. Higgins ("Higgins' 11/2/12 Declaration"), a Declaration of Diane Vavrasek ("Vavrasek's Declaration"), a memorandum of law ("GE's Initial Memorandum"), and a Statement of Material Facts.

3.      As part of that motion, the Management Defendants argued, *inter alia*, that all of Plaintiff's retaliation claims should be dismissed based on the undisputed evidence before the Court.

4.      That part of the motion was directed not only at Plaintiff's claim that she was unlawfully transferred "in or around February 26, 2010, . . . from the Bucket Assembly Area [of GE's Schenectady, New York, manufacturing facility] to the Rotor Mag Test Area . . ." but at any claim of unlawful retaliation related to Plaintiff's termination.

5.      More specifically, the Management Defendants argued that they were entitled to summary judgment on plaintiff's termination-based retaliation claims (before the conduct of discovery) for the following reasons: (a) "Plaintiff cannot establish a prima facie case of retaliation with respect to her termination"; (b) "Defendant GE had legitimate, nondiscriminatory, and nonretaliatory reasons for terminating plaintiff's employment"; (c) "Defendant GE's reasons for terminating plaintiff are not pretextual"; and (d) "[e]ven if plaintiff could prove that a retaliatory motive played a part in GE's termination decision, her retaliation claim would still fail, as a matter of law," because "GE ha[d] offered irrefutable record evidence . . . that it would have made the same decision to terminate [plaintiff's] employment as a result of her egregious misconduct, regardless of whether a retaliatory motive existed or not."

6.      Plaintiff "failed to file either an affidavit of her own, or any other evidence in opposition to the Management Defendants' summary judgment motions, and she . . . failed to file a counter-statement of material facts in dispute, as required by Local Rule 7.1(a)(1)."[51]

## The Court's Decision and Order of March 31, 2014

7.      In its Decision and Order of March 31, 2014, ruling on the Management Defendants' first motion for summary judgment, the Court found that "Plaintiff's counsel . . . made the strategic and perilous decision to respond to the Management Defendants' motion for summary judgment not with evidence in Plaintiff's custody or control but with merely a vague and conclusory Fed. R. Civ. P. 56(d) declaration."[52]

8.      Moreover, the Court rejected the Fed. R. Civ. P. 56(d) request made by Plaintiff, and accepted "the factual assertions in the Management Defendants' Statement of Material Facts, and their alternative ground for dismissal" under Fed. R. Civ. P. 56 on all of Plaintiff's claims

---

[51]      (*Compare* Dkt. No. 81, Attach. 24, at ¶ 6 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 6 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].) *See also Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit'"); *CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'").  For sake of brevity, the Court will not repeat these case cites below in the various footnotes to which they also apply.

[52]      (*Compare* Dkt. No. 81, Attach. 24, at ¶ 7 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 7 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

against the Management Defendants other than her termination-based retaliation claims.[53]

9.      As a result, the Court dismissed all of Plaintiff's claims for race

discrimination and racial harassment, as well as for sex discrimination and sexual harassment, as

against all Defendants (except Defendant Lanoue).[54]

10.     In doing so, the Court found that, "in response to Plaintiff's complaints,

supervisors (including two females) [i.e., Vavrasek and O'Gorman] repeatedly met with Plaintiff,

repeatedly conducted investigations, suspended Frank Harris and Defendant Lanoue without pay

for a week, gave Harris and Lanoue a Final Written Warning, separated Plaintiff and Harris,

[and] separated Plaintiff and Lanoue."[55]

11.     The Court also specifically found that "Plaintiff's termination was not at all based

on her gender or sex (but events in which she repeatedly and/or publicly called supervisors racist

with no factual support)."[56]

---

[53]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 8 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 8 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[54]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 9 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 9 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[55]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 10 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 10 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[56]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 11 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 11 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the

12.    Additionally, the Court found that, "based on the undisputed material facts, no rational fact finder could conclude that, despite knowing of the sexual harassment of Plaintiff by Defendant Lanoue, Defendant General Electric failed to take appropriate action to stop it," and that "no rational fact finder could conclude that any tangible employment action taken against Plaintiff was based on her gender."[57]

13.    In dismissing Plaintiff's termination-based harassment claims, the Court found it "particularly noteworthy" that, "on September 20, 2011, following the issuance of a Final Written Warning (dated July 13, 2011), supervisors terminated Plaintiff based on (a) her refusal to, perform an assignment and comment 'get your white boys to do it' during fourth fiscal week of 2011, (b) her unsupported accusation (in the presence of an employee[] and a customer) on March 2, 2011, that she had been called a 'n-----' at work, (c) her resistance to work and her repeatedly, publicly and argumentatively accusing her supervisor of being a racist with no factual support on July 12, 2011, and (d) her calling a co-worker and a supervisor a racist with no factual support on September 14, 2011."[58]

---

Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[57]    (*Compare* Dkt. No. 81, Attach. 24, at ¶ 12 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 12 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[58]    (*Compare* Dkt. No. 81, Attach. 24, at ¶ 13 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 13 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

14. Regarding Plaintiff's claims against GE for hostile work environment harassment under Title VII, the Court also found as follows:

> Defendant General Electric cannot reasonably be found to have failed to provide to Plaintiff a reasonable avenue for complaint, or to have failed to take appropriate remedial action based on the facts that it knew or reasonably should have known, The Court notes also that, following [GE's] suspension of Defendant Lanoue, its separation of Plaintiff and Harris, and its separation of Plaintiff and Lanoue Plaintiff s sexual harassment complaints against Lanoue and Harris (none of which was found to be substantiated) decreased in number and became more vague in nature. Finally, the Court notes that, in addition to keeping an open line of communication with Plaintiff regarding complaints of racial [and alleged sexual] discrimination, Defendant [GE] rather promptly investigated those complaints and took appropriate action.[59]

15. In granting summary judgment to the Management Defendants on Plaintiff's claims of retaliation related to her reassignment of February, 2010, by the Company, this Court found as follows: "(1) there is insufficient evidence from which a rational fact finder could conclude that Plaintiff's reassignment amounted to adverse action; and (2) "there is insufficient evidence from which a rational fact finder could conclude that any such adverse action was caused by her prior complaints."[60]

---

[59] (*Compare* Dkt. No. 81, Attach. 24, at ¶ 14 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 14 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[60] (*Compare* Dkt. No. 81, Attach. 24, at ¶ 15 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 15 [Plf.'s Rule 7.1 Response, failing to deny the fact asserted but merely challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

16. The Court also found that "[a]ny conclusion that Plaintiff's reassignment was caused by her complaints is entirely speculative."[61]

17. Similar arguments were made by the Management Defendants in their first motion for summary judgment motion regarding Plaintiffs termination-based retaliation claims.

18. In making those argument, the Management Defendants relied on the Second Circuit's decision in *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000), where the Second Circuit held that "[a]n employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise."

19. The Management Defendants also previously argued that other circuit courts "have come to a similar conclusion, holding that that disruptive or unreasonable protests against discrimination are not protected activity under Title VII and therefore cannot support a retaliation claim."

20. In its Decision and Order, the Court observed "that most courts that have addressed the issue have rejected the actionability of terminating an African-American employee for insubordination where the employee has (outside a formal proceeding) orally accused his or her supervisor of being racist without substantiation–particularly where the accusation was made in the presence of other employees."[62]

---

[61]    (*Compare* Dkt. No. 81, Attach. 24, at ¶ 16 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 16 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[62]    (*Compare* Dkt. No. 81, Attach. 24, at ¶ 20 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 20 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the

21.     However, the Court concluded that "Plaintiff should be afforded the opportunity to conduct discovery before deciding this portion of the Management Defendants' motion for summary judgment."[63]

22.     In reaching this conclusion, the Court explained that, "even setting aside the oral charges of racism against her supervisors in public, the sheer number and duration of Plaintiff's formal complaints (at least initially), coupled with a hint of evidence that at least some supervisors may have been growing somewhat weary of those complaints, gives the Court pause."[64]

23.     Accordingly, the Court denied "that discrete portion of Defendant [GE's] motion for summary judgment" seeking the dismissal of Plaintiff's termination-based retaliation claims against the Management Defendants under Title VII, Section 1981, and the New York Human Rights Law ("HRL"), "without prejudice" to renew this motion after the close of discovery.[65]

---

Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[63]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 21 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 21 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[64]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 22 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 22 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[65]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 23 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 23 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

24. The Court also explained that "it [was expressing] no opinion regarding whether this ['hint' of] evidence, in and of itself, would suffice to create a genuine dispute of material fact on a second motion for summary judgment filed on this issue by the Management Defendants."[66]

25. A subsequent motion for reconsideration by Defendant Lanoue regarding the part of the Decision and Order that left certain claims against her individually still in the case, and a cross-motion for reconsideration by Plaintiff, were both denied by the Court on June 4, 2014, leaving all of the above-quoted findings by the Court unaffected.[67]

<u>The Management Defendants' Answer and Defenses</u>

26. On April 14, 2014, the Management Defendants timely filed an Answer, admitting, among other things, "that plaintiff was terminated by GE on or about September 20, 2011, for legitimate non-discriminatory business reasons unrelated to her race, sex, gender, or any other unlawful factor or consideration."

27. In their Answer, the Management Defendants generally denied Plaintiff's claims of retaliation in all other material respects.

28. In addition, in their Answer, the Management Defendants set forth numerous defenses, including but not limited to the following:

---

[66] (*Compare* Dkt. No. 81, Attach. 24, at ¶ 24 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 24 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

[67] (*Compare* Dkt. No. 81, Attach. 24, at ¶ 25 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 25 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

(a) "[d]efendants exercised reasonable care to prevent, and promptly correct any alleged discriminatory or harassing behavior including, but not limited to, establishing a complaint policy and procedure, the substance of which is distributed and made available to all employees, which policy and procedure allows employees to make complaints and to seek appropriate redress," and, "[u]pon information and belief, plaintiff unreasonably failed to take advantage of the preventive and corrective opportunities provided or to otherwise avoid her alleged harm";

(b) "[d]efendants did not condone, ratify, endorse, or approve any discriminatory, harassing, or retaliatory conduct";

(c) "[w]ithout assuming any burden of proof, unless required by law, . . . all actions taken with respect to plaintiffs employment were made in good faith and for legitimate, non-discriminatory, and non-retaliatory reasons unrelated to plaintiff's sex, any protected activity in which she may have engaged, or any other unlawful factor"; and

(d) "[w]hile neither a retaliatory nor discriminatory motive played a part in any of the decisions made by defendants concerning plaintiffs employment, to the extent that, any impermissible motive is ultimately attributed to defendants in this action, defendants assert that they would have made the same employment decisions in the absence of any such motive."

<u>Discovery Conducted by the Parties:</u>
<u>Plaintiff's Deposition</u>

29.     On January 23 and 29, 2015, after several extensions of the discovery deadline

and after the parties had exchanged initial disclosures and requests for documents and

interrogatories (and responses to same), Plaintiff's deposition was taken both stenographically

and by videotape.

30.     At no time before the completion of Plaintiff's deposition on January 29, 2015,

did Plaintiff or her counsel request the opportunity to review the transcripts and to make

changes,

as provided in Fed. R. Civ. P. 30(e).

31.     During her deposition, numerous documents were marked as exhibits and were

reviewed with Plaintiff by counsel for the GE Defendants and by Defendant Lanoue's counsel,

including but not limited to the Amended Complaint, the Court's Decision and Order of March

31, 2014, and the Management Defendants' initial disclosures Pursuant to Fed. R. Civ. P.

26(A)(1).[68]

---

[68]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 31 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 31 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate record citation].)  *See also N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts");

32.     The Management Defendants' initial disclosures included Vavrasek's prior sworn

Declaration, Higgins' 11/2/12 Declaration, and the exhibits attached thereto.[69]

33.     Additional exhibits marked and reviewed with Plaintiff by counsel for the

Management Defendants during Plaintiff's deposition included but were not limited to the

Management Defendants' Responses and Objections to Plaintiff's First [and only] Discovery

Demands, consisting of two binders of documents.[70]

34.     Also marked as exhibits and reviewed with Plaintiff by counsel for the

Management Defendants were the following additional documents: (a) Plaintiff's termination

letter of September 20, 2011, signed by Vavrasek, together with a number of attachments to it;

(b) GE's "Schenectady Plant Work Practices, Procedures and Conduct Rules;" (c) Plaintiff's

responses to Defendant GE and Management Employees' First Set of Discovery Demands,

dated December 14, 2014; (d) Plaintiff's Rule 26 Automatic Disclosure, dated September 19,

---

*Goldstick v. The Hartford, Inc.*, 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19,
2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative
and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the
admissions plaintiff has been compelled to make"); *cf.* N.D.N.Y. L.R. 7.1(a)(3) (providing that,
to the extent that a non-movant desires to set forth any additional material facts that she contends
are in dispute, she is required to do so in separately numbered paragraphs followed by specific
record citations).  For sake of brevity, the Court will not repeat these case cites below in the
various footnotes to which they also apply.

[69]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 32 [Mgmt. Defs.' Rule 7.1 Statement,
supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88,
Attach. 24, at ¶ 32 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert
a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate
record citation].)

[70]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 33 [Mgmt. Defs.' Rule 7.1 Statement,
supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88,
Attach. 24, at ¶ 33 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert
a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate
record citation].)

2014; and (e) email messages from former-Management Defendant Meeghan Scully, dated July 12, 2011, and from James (aka "Jed") Boswell on the same date, detailing what they perceived, upon information and belief, as inappropriate workplace conduct by Plaintiff on July 12, 2011.[71]

35.　　The remainder of the exhibits marked and identified during Plaintiff's deposition and reviewed with her were all marked by Defendant Lanoue's counsel during his examination of Plaintiff.

36.　　As reflected in the transcripts of Plaintiff's deposition, during her deposition, Plaintiff made numerous sworn admissions relating specifically to her remaining retaliation claims against GE, Vavrasek and O'Gorman.[72]

37.　　Plaintiff began working for GE in Schenectady in or about 1981 and continued working there until her termination on September 20, 2011.

38.　　She progressed within the Company in a number of different jobs, until her last job as a D21 inspector.

39.　　She was a D21 inspector from 2000 until her termination.

40.　　At the time of Plaintiff's termination on September 20, 2011, James (aka "Jed") Boswell (never a Defendant in this case) was the Cell Leader in Building 273, to whom she reported.

---

[71]　　(*Compare* Dkt. No. 81, Attach. 24, at ¶ 34 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 34 [Plf.'s Rule 7.1 Response, admitting the fact asserted then attempting to assert a fact that is non-responsive to the fact asserted and unsupported by a specific and accurate record citation].)

[72]　　(*Compare* Dkt. No. 81, Attach. 24, at ¶ 36 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 36 [Plf.'s Rule 7.1 Response, admitting the fact asserted but challenging the Court's prior Fed. R. Civ. P. 56[d] ruling and arguing that unspecified portions of newly discovered record evidence warrant the Court's reconsideration of various of its prior rulings].)

41.     At the time of Plaintiff's termination, former-Defendant Meeghan Scully was a Facilitator who indirectly supervised Plaintiff's work and gave her assignments.

42.     Former-Defendant Dick Boswell was an Operations Leader to whom Plaintiff reported for about one year.

43.     For as long as she was employed at GE, Plaintiff knew that the Schenectady Plant had certain "Work Practices, Procedures and Conduct Rules"; and, as far as Plaintiff knew, those rules "[t]heoretically" applied to all employees at the Plant.[73]

44.     The rules made certain behavior "unacceptable" and subject to discipline (including discharge), including unauthorized time away from the work station, failure to follow specific instructions to specifications, poor workmanship, poor housekeeping, and obscene or abusive language, including derogatory racial or religious remarks and related actions.[74]

45.     The rules also included "prohibited acts" for which an employee could be sent home immediately, disciplined or discharged, including insubordination (refusal to follow supervisor's orders), and immoral or indecent behavior.[75]

---

[73]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 43 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 43 [Plf.'s Rule 7.1 Response, denying the fact asserted but citing evidence that merely amends the second half of the fact, then adding a non-responsive statement supported by only a general citation].)

[74]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 44 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 44 [Plf.'s Rule 7.1 Response, admitting the fact asserted and adding two non-responsive statements supported by only general citations].)

[75]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 45 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 45 [Plf.'s Rule 7.1 Response, admitting the fact asserted and adding two non-responsive statements supported by only general citations].)

46.     Never once did Plaintiff personally hear herself called a "N-----" or any other derogatory racial name (including "Black bitch") by Vavrasek, O'Gorman, Lanoue, Jed Boswell, Dick Boswell, Meeghan Scully, Mike Tomassone, or any other GE employee.[76]

47.     On September 20, 2011, during a meeting in Building 273 at the Schenectady Plant, attended by Plaintiff, Vavrasek, Jed Boswell, Erick Olson, at least one of Plaintiff's union representative (Carmen DePaolo), Vavrasek gave Plaintiff, and reviewed with her, a letter of that date which stated as follows, in pertinent part: "This letter will confirm that your employment is being terminated today, due to your chronic inability to conduct yourself in a professional and respectful manner in the workplace."[77]

48.     At her deposition, Plaintiff conceded that calling a supervisor a racist, saying "get your White boys to do it," or accusing a supervisor as being part of a "hate group" (with no proof of that accusation) would violate GE's Schenectady Plant Work Practices, Procedures and Conduct Rules; however, she denies engaging in that type of behavior, notwithstanding evidence in the record indicating otherwise, including contemporaneous emails, statements and other evidence produced in discovery and on this motion.[78]

---

[76]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 46 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 46 [Plf.'s Rule 7.1 Response, admitting the fact asserted and adding three non-responsive statements supported by only general citations].)

[77]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 47 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 47 [Plf.'s Rule 7.1 Response, admitting part of the fact, denying the remainder of the fact, but not citing to a portion of the record that supports that denial]; *see also* Dkt. No. 81, Attach. 12, at 2 [attaching copy of letter].)

[78]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 48 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 48 [Plf.'s Rule 7.1 Response, denying the fact asserted, calling the Management

49.     In addition, at her deposition, Plaintiff recalled having had a conversation with her Cell Leader, Jed Boswell, on September 14, 2011, about her work and his expectations of two other inspectors (both of whom were Caucasian).[79]

50.     She admitted Boswell told her that he wanted her to go back to her work area, that it was in an inspector's job classification to conduct "housekeeping," and that such "housekeeping" was considered to be a job assignment as well; she also admitted that such "housekeeping" was part of her job description, and that all D21 inspectors had the same job description.[80]

51.     At her deposition, Plaintiff denied telling Boswell that "[t]his [i.e., his treatment of her] is discrimination" (as reflected in Boswell's notes), and she denied telling another employee that Boswell "came down tell me that the blacks have to go back to their area"

---

Defendants' evidence as a "sham," and providing only a general citation to two depositions and two affidavits in their entirely].)  *See also McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 280 (2d Cir.1999) (explaining that a plaintiff does not create an issue of fact merely by "impugning [a witness'] honesty"); *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp.2d 378, 391 (S.D.N.Y. 2012) ("Neither conclusory assertions, nor contentions that the affidavits supporting the motion are not credible, create a genuine issue of material fact.").  For sake of brevity, the Court will not repeat these case cites below in the various footnotes to which they also apply.

[79]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 49 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with an accurate record citation] *with* Dkt. No. 88, Attach. 24, at ¶ 48 [Plf.'s Rule 7.1 Response, denying the fact asserted and providing only a general citation that does not support the denial].)

[80]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 50 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations, although omitting a citation to page "189" to Plf.'s Depo. Tr.] *with* Dkt. No. 88, Attach. 24, at ¶ 50 [Plf.'s Rule 7.1 Response, denying the fact asserted and providing only general citations that do not support the denial, including a citation to an affidavit in its entirety].)

(claiming "this whole thing is a lie").[81]

52.     Plaintiff also denies calling Boswell a "racist" during this incident; however, she admits telling him during this incident that he was "setting me up to be assaulted," "setting me up to be shot by a sniper" (even though she never saw any person employed at GE with a gun), that she told Boswell "Am I the help, just here to clean?" and that she told him (rather than saying he should "apologize to her for being a racist," as Boswell's notes state) that he "should apologize to me for getting me killed" (adding at her deposition that she believed Mr. Boswell was literally trying to get her killed based on "[t]he lies and the phony investigation and the fact that they refused to investigate the threats" allegedly made against her).[82]

Discovery Conducted by the Parties:<br>Depositions of Vavrasek and O'Gorman

53.     Vavrasek and O'Gorman were each deposed by Plaintiff on February 4, 2015.

54.     Both Vavrasek and O'Gorman testified during their depositions that the decision to terminate Plaintiff's employment was made by a team of individual managers, including Cell Leader Jed Boswell, Center of Excellence ("COE") Leader Erik Olson, Plant

---

[81]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 51 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations, although omitting a citation to page "197" to Plf.'s Depo. Tr.] *with* Dkt. No. 88, Attach. 24, at ¶ 51 [Plf.'s Rule 7.1 Response, denying the fact asserted and providing only general citations that do not support the denial, including a citation to an affidavit in its entirety].)

[82]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 52 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations, although omitting a citation to page "203" to Plf.'s Depo. Tr.] *with* Dkt. No. 88, Attach. 24, at ¶ 52 [Plf.'s Rule 7.1 Response, denying the fact asserted and providing only general citations that do not support the denial, including a citation to an affidavit in its entirety].)

Manager Kevin Sharkey, Vavrasek and O'Gorman.[83]

55.     None of the individuals referred to in footnote 13 of the Court's Decision and

Order of March 31, 2014 (which lists examples of the documents that constituted the "hint" of

evidence that at least some supervisors may have been growing somewhat weary of Plaintiff's

complaints)–including HR Manager Mark Sullivan and former defendant Meeghan Scully–were

part of the management team that made the decision to terminate Plaintiff's employment.[84]

56.     As stated earlier, a two-page letter dated September 20, 2011, which Vavrasek

signed and reviewed with Plaintiff on the same date in the presence of Plaintiff, Cell Leader

Boswell, Olson, and Plaintiff's union representative (DePaolo), stated the reasons for Plaintiff's

termination.[85]

57.     Consistent with the letter, Vavrasek stated to Plaintiff at the meeting that she was

being terminated for her "chronic inability to behave in a professional manner in the workplace,"

her consistent use of race-based identifiers against colleagues and co-workers in violation of

---

[83]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 54 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 54 [Plf.'s Rule 7.1 Response, admitting the fact asserted but calling the Management Defendants' evidence as a "sham," and providing only a general citation to three depositions and an affidavit in their entirely].)

[84]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 55 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with citation to attorney declaration, which provides accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 54 [Plf.'s Rule 7.1 Response, denying the fact asserted, calling the Management Defendants' evidence as a "sham," and providing only a general citation to three depositions and an affidavit in their entirely].)

[85]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 56 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with citation to attorney declaration, which provides accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 56 [Plf.'s Rule 7.1 Response, denying the fact asserted, calling the Management Defendants' evidence as a "sham," and providing only a general citation to three depositions and an affidavit in their entirely].)

Schenectady Plant work rules, and her "refus[al] to do work given to her by her supervisors multiple times," all in direct violation of GE's Schenectady Plant work rules.[86]

58.     These stated reasons are consistent with two exhibits attached to Vavrasek's Declaration and the Higgins 5/1/15 Declaration (i.e., an email from Boswell dated September 15, 2011, and an email from HR Leadership Program participant Ryan McAllister dated September 15, 2011), which regard the incident between Plaintiff and Cell Leader Boswell on September 14, 2011, and Plaintiff's termination.[87]

59.     According to Vavrasek, it was on the basis of the facts stated in this second exhibit (including but not limited to the substance Plaintiff's interview by Mr. McAllister and Mr. Skrocki [another HR employee at the plant] on September 15, 2011, during which Ms. Alex reportedly admitted, among other things, that she did in fact call Cell Leader Boswell a "racist" with no factual support for such a claim), as well as for the reasons stated in Vavrasek's termination letter to Ms. Alex, that a decision was made by the Company to terminate Plaintiff's employment, effective September 20, 2011.[88]

---

[86]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 57 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with citation to attorney declaration, which provides accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 57 [Plf.'s Rule 7.1 Response, denying the fact asserted, calling the Management Defendants' evidence as a "sham," and providing only a general citation to four depositions and two affidavits in their entirely].)

[87]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 58 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with citation to attorney declaration, which provides accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 58 [Plf.'s Rule 7.1 Response, denying the fact asserted, calling the Management Defendants' evidence as a "sham," and providing only a general citation to three depositions and an affidavit in their entirely].)

[88]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 59 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with citation to attorney declaration, which provides accurate record citations, although citing "¶ 354" instead of "¶ 374" of Vavrasek's declaration] *with* Dkt. No. 88, Attach. 24, at ¶ 59 [Plf.'s Rule 7.1 Response, denying the fact asserted, calling

60.     During Plaintiff's deposition, when she was asked about certain specific events on September 14, 2014, related to her termination (which events are referred to in Cell Leader Boswell's email dated September 15, 2011, in Mr. McAllister's email of the same date, and in Plaintiff's termination letter dated September 20, 2011), Plaintiff testified that many, if not all, of the facts set forth in these Company business records are lies.[89]

61.     Similarly, throughout her deposition, Plaintiff stated that nearly everyone at GE involved in her progressive discipline and ultimate termination (including but not limited to Vavrasek, O'Gorman, Sullivan, McAllister, Cell Leader Boswell, Scully, Polukort, Operations Leader Dick Boswell, Lanoue, other hourly employees, and Plaintiff's former Union representatives) lied about her misconduct at work in an effort to retaliate against her because she is a Black woman or for similar reasons.[90]

62.     In addition, Plaintiff testified under oath that her "behavior [at work] was always good."

---

the Management Defendants' evidence as a "sham," and providing only a general citation to four depositions and two affidavit in their entirely].)

[89]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 60 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 60 [Plf.'s Rule 7.1 Response, denying only part of the fact asserted, calling the Management Defendants' evidence as a "sham," and providing only a general citation to four depositions and two affidavits in their entirely].)

[90]     (*Compare* Dkt. No. 81, Attach. 24, at ¶ 61 [Mgmt. Defs.' Rule 7.1 Statement, supporting the above-listed factual assertion with accurate record citations] *with* Dkt. No. 88, Attach. 24, at ¶ 61 [Plf.'s Rule 7.1 Response, denying only part of the fact asserted, calling the Management Defendants' evidence as a "sham," and providing only a general citation to four depositions and two affidavits in their entirely].)

## II.   GOVERNING LEGAL STANDARDS

### A.   Legal Standard Governing Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing a motion for summary judgment, the Court will not recite, in its entirety, that legal standard in this Decision and Order, which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 79, Attach. 1 [Def. Lanoue's Memo. of Law]; Dkt. No. 81, Attach. 23 [Mgmt. Defs.' Memo. of Law]; Dkt. No. 88, Attach. 23 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 94 [Def. Lanoue's Reply Memo. of Law]; Dkt. No. 96 [Mgmt. Defs.' Reply Memo. of Law].)  Rather, the Court respectfully refers the reader the its recitation of the legal standard in Part III.B. of its Decision and Order of March 31, 2014.  (Dkt. No. 48.)

### B.   Legal Standards Governing Plaintiff's Remaining Claims and Defendants' Defenses

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims and Defendants' defenses in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for the review of the parties. (*See generally* Dkt. No. 79, Attach. 1 [Def. Lanoue's Memo. of Law]; Dkt. No. 81, Attach. 23 [Mgmt. Defs.' Memo. of Law]; Dkt. No. 88, Attach. 23 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 94 [Def. Lanoue's Reply Memo. of Law]; Dkt. No. 96 [Mgmt. Defs.' Reply Memo. of Law].)  Rather, the Court respectfully refers the reader the its recitation of the law in Part III.A.3.a. of its Decision and Order of March 31, 2014.  (Dkt. No. 48.)

# III. ANALYSIS

## A. Defendant Lanoue's Motion for Summary Judgment

After carefully considering the matter, the Court grants Defendant Lanoue's motion for the first reason stated in her memorandum of law in chief, and the first, second, third and fourth reasons stated in her reply memorandum of law. *See, supra,* Part I.B. of this Decision and Order. To that analysis, the Court adds four points.

First, in reaching its conclusion, the Court must, based on the undisputed material facts and governing law, reject the second, third and fourth reasons stated in Defendant Lanoue's memorandum of law in chief. *See, supra,* Parts I.B. and I.D. of this Decision and Order.

Second, a few words are necessary elaborating on Plaintiff's response to Defendant Lanoue's statement of material facts. Occasionally, in her Rule 7.1 Statement, Defendant Lanoue has made minor errors in her page citations. (*See, e.g.*, Dkt. No. 79, Attach. 11, at ¶ 20 [Def. Lanoue's Rule 7.1 Statement, citing page "364" instead of page "304" of Plf.'s Depo. Tr.].) Moreover, occasionally, Defendant Lanoue has cited not a particular page or series of pages of Plaintiff's deposition transcript but a section of that transcript spanning 65 pages (albeit sometimes out of arguable necessity given the assertion of an *absence* of testimony). (Dkt. No. 79, Attach. 11, ¶¶ 9, 10, 21, 22, 67, 68, 77 [Def. Lanoue's Rule 7.1 Statement].) While such practices have tested the limits of Local Rule 7.1(a)(3)'s requirement of a "*specific* citation to the record where the fact is established" (emphasis added), the Court has generally been able to locate the fact(s) asserted; and, if it has not been able to do so, it has deleted the unsupported fact.

However, the Court draws the line at Plaintiff's practice, in her Rule 7.1 Response, of *routinely* citing a section of her deposition transcript spanning *196* pages, and often adding

references to one or more deposition transcripts in their *entirety*. (Dkt. No. 88, Attach. 25, ¶¶ 7, 8, 9, 10, 21, 22, 32, 33, 35, 44, 46, 47, 48, 49, 50, 64, 66, 67, 68, 69, 70, 71, 73 [Plf.'s Rule 7.1 Response].) *See also Clark v. N.Y.S. Office of the State Comptroller,* 09-CV-716, 2014 WL 823289, at *1, n.8 (N.D.N.Y. Mar. 3, 2014) ("While Clark responded, . . . she did not do so in compliance with Local Rule 7.1(a)(3). For instance, many of Clark's denials do not, as Rule 7.3 requires, set forth a specific citation to the record where the factual issue arises, but instead accompany an instruction to "see record evidence" or "see total record evidence," contain no citation whatsoever, or generally cite an entire document–often, an entire deposition transcript."); *Wang v. Swain,* 09-CV-0306, 2011 WL 887815, at *1 (N.D.N.Y. Mar. 14, 2011) (McAvoy, J.) ("[A] simple citation to an 'exhibit' consisting of numerous documents, or citation to a deposition without a pinpoint citation to where in the deposition support for the denial is contained, is insufficient."); *Bronner v. Catholic Charities of Roman Catholic Diocese of Syracuse, Inc.*, 08-CV-0015, 2010 WL 981959, at *1 (N.D.N.Y. Mar. 15, 2010) (McAvoy, J.) ("Plaintiff simply cites to the documents generally, i.e., a simple cite to the exhibit number, and in many instances, cites to numerous exhibits to support a single proposition. Apparently, Plaintiff or his attorneys expect the Court to wade through the mass of paper to find whether or not the 'cite' supports a proposition made by Plaintiff . . . .").

Local Rule 7.1(a)(3) serves a valuable purpose, especially for congested trial courts like this one; the Court may, and will, enforce that rule in this circumstance. *See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) ("[D]istrict courts have the authority to institute local rules governing summary judgment submissions, . . . and [we] have affirmed summary judgment rulings that enforce such rules . . . . Rules governing summary judgment practice are essential tools for district courts, permitting

45

them to efficiently decide summary judgment motions by relieving them of the onerous task of hunting through voluminous records without guidance from the parties.") (internal citations and quotation marks omitted).

The Court notes that, to the extent that Plaintiff seeks the reconsideration of various of the Court's prior rulings, that request is denied on each of the following four alternative grounds: (1) it is untimely under Local Rule 7.1(g); (2) it is unsupported by a memorandum of law on the subject, in violation of Local Rule 7.1(a)(1); (3) it is unsupported by an affidavit on the subject, in violation of Local Rule 7.1(a)(2); and (4) it is unsupported by a showing that there has been an intervening change in controlling law, there has been discovery of material evidence that was previously unavailable, or there exists a need to correct a clear error of law or to prevent manifest injustice, as required by *United States v. Sanchez*, 35 F.3d 673, 677 (2d Cir.), *cert. denied*, 514, U.S. 1038 (1995).

Third, at its essence, Plaintiff's theory of *racial* bias (as opposed to personal or political bias) hinges on the fact that Defendant Lanoue had allegedly referred to Plaintiff as "N-----" behind her back. *See, e.g., supra,* Part I.D. of this Decision and Order (asserting facts in Paragraph Numbers 33, 44 and 62). As an initial matter, the Court notes that, when scrutinized in light of the allegations of her Amended Complaint, Plaintiff's deposition testimony is not that Defendant Lanoue called *her* a "N-----" (behind her back) but that Lanoue called *Jeffrey Walton* and/or *President Obama* a "N-----" (behind her back). (*Compare* Dkt. No. 4, at ¶ 64 [Plf.'s Am. Compl., alleging, "defendant MICHELE LANOUE persuaded defendant WILLIAM CAPRON to tell Jeffrey Walton that *he* is either a 'Spic, Half-N-----, or N-----.'"] [emphasis added; internal quotation marks removed] *with* Dkt. No. 79, Attach. 7, at 99 [attaching page "383" of Plf.'s Depo. Tr., stating, "[O]nce again, when someone refers to *you* as a n-----, half-n----- or spic and

then they post gun imagery, then that means that they have a racial issue with you–"] [emphasis added]; *compare* Dkt. No. 4, at ¶ 29 [Plf.'s Am. Compl., alleging, "defendant MICHELE LANOUE and decedent Frank Harris would post depictions of prominent persons of color such as: . . . '2012 Do Not Re-nig' referencing President Barack Obama (African Male); and a host of other postings referring to persons of color as . . . 'Nig,' and 'N-----.'"] *with* Dkt. No. 79, Attach. 7, at 115-16 [attaching pages "399" and "400" of Plf.'s Depo. Tr., stating that the "2012 don't re-nig" wall posting in Plaintiff's area occurred after Defendant Lanoue came down to that area].) This distinction is of least some materiality to a hostile work environment claim. *See EEOC v. A. Sam & Sons Produce Co.,* 872 F. Supp. 29, 36 (W.D.N.Y. 1994) ("Less compelling are Titus's claims that she was subjected to hostile environment sexual harassment. Although she, on three occasions, overheard Charles through the walls of his office refer to the women in the office as 'whores,' Titus herself stated that Charles never called her a whore . . . ."); *McDuffie-Smithson v. Univ. of S.C. Sch. of Med.*, 11-CV-0190, 2012 WL 3637736, at *5 (D.S.C. July 19, 2012) (granting defendant's motion for summary judgment, because, while there was an incident in which defendant called a co-worker a "black bitch," that racial epithet was not directed at plaintiff); *Barnett v. Certified Grocers Midwest, Inc.*, 95-CV-1943, 1997 WL 639214, at *24 (N.D. Ill. Oct. 6, 1997) ("Although Plaintiff describes several incidents where white employees referred to blacks as 'n------,' however, he has offered no non-hearsay evidence of any such incidents, nor has he personally been called a 'N-----' or other racially derogatory term.").

In any event, Plaintiff's deposition testimony that one or more unidentified co-workers told Plaintiff that Defendant Lanoue had referred to Plaintiff as "N-----" (behind her back) is inadmissible. Specifically, the alleged statements by one or more unidentified co-workers is hearsay under Fed. R. Evid. 801(a)-(c), and is not admissible as a statement by a party or a

party's employee on a matter within the scope of the employment relationship while it existed, under Fed. R. Evid. 801(d)(2)(A),(D). *See, e.g., Green v. City of Northport,* 11-CV-2354, 2014 WL 1338106, at *4 (N.D. Ala. Mar. 31, 2014) ("Plaintiff testified that Tommy Watkins, Collins's former father-in-law, told him that Collins had stated to Watkins that 'he was going to get rid of that black son-of-a bitch who drives the BMW.' . . . However, plaintiff has presented no evidence as to why he was unable to present Watkins's sworn testimony in response to defendants' Motion for Summary Judgment. Plaintiff's testimony as to Watkins's statement and his counsel's statement that Watkins will be called at trial, without more, cannot transform Watkins's hearsay statements into admissible evidence for purposes of summary judgment.") (internal quotation marks omitted); *Cain v. Elgin, Joliet E. Ry. Co.*, 04-CV-0347, 2006 WL 163010, at *14 (N.D. Ind. Jan. 19, 2006) ("[T]his Court cannot take into consideration Plaintiff's alleged statement that Plaintiff was referred to a 'n-----,' because the statement was made outside the presence of Plaintiff, and constitutes hearsay."); *Maury v. Ogle Cnty.*, 00-CV-50441, 2005 WL 79855, at *2 (N.D. Ill. Jan. 12, 2005) ("Plaintiff offers a hearsay statement that an acquaintance of hers, Joe Calso, had told her that Chief Wilkinson of the sheriff's office had referred to her 'f***ing that n*****.' But plaintiff's testimony about what Calso told her is hearsay and not admissible.").

The closest Plaintiff comes to adducing admissible evidence is through the affidavit of Carol Adams. While certain paragraphs of that affidavit come close to stating that Ms. Adams personally heard Defendant Lanoue refer to Plaintiff as "N-----," they fall conspicuously short of stating that fact. (Dkt. No. 88, Attach. 21, at ¶¶ 21, 26, 28, 29, 31, 32, 47, 63 [Adams Affid.].) Rather, Ms. Adams states she personally heard Defendant Lanoue refer to Plaintiff as "Black [b]itch." (*Id*. at ¶ 32.) Of course, the term "Black bitch," while deplorable, is not the term that

one or more co-workers allegedly told Plaintiff that Defendant Lanoue was using to refer to African-Americans, which (again) was "N-----." (Dkt. No. 4, at ¶¶ 29, 64 [Plf.'s Am. Compl., alleging that Lanoue made postings referring to persons of color at "N--" and "N----," and that she referred to Jeffrey Walton as either a "Half-N---" or "N----"]; Dkt. No. 79, Attach. 7, at 54, 55, 86, 87, 99 [attaching pages "338," "339," "370," "371" and "383" of Plf.'s Depo. Tr., testifying that one or more unidentified co-workers allegedly told Plaintiff that Defendant Lanoue was referring to her as "N-----"].)[91]

In one sense, this disparity is immaterial because the term "Black bitch," like the term "N-----," is racial in nature. *See Market v. Ill. Bell. Tel. Co.*, 01-CV-3841, 2003 WL 22697284, at *12 (N.D. Ill. Nov. 13, 2003) ("[Defendants] called [plaintiff] names that were . . . tinged with race ('black bitch') . . . ."). In another sense, however, the disparity is highly material because Plaintiff testified at her deposition that her Amended Complaint contains each and every allegation against Defendant Lanoue that supports her claim for a hostile work environment based on race. *See, supra,* Part I.D. of this Decision and Order (asserting fact in Paragraph Number 20). The first time that Plaintiff asserted the "Black bitch" allegation was five months

---

[91]    Moreover, it is noteworthy that Ms. Adams does not even state that she *told* Plaintiff at the time of the alleged incidents that Defendant Lanoue had used, or was using, the term "Black Bitch." (Dkt. No. 88, Attach. 21, at ¶ 32 [Adams Affid.].) This fact is of least some materiality to a hostile work environment claim. *See also Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 182 (2d Cir. 2001) ("Leibovitz admits that she was unaware of the alleged harassment when it was happening."); *Benjamin v. Metro. Transp. Auth.*, 07-CV-3561, 2012 WL 3188764, at *12 (S.D.N.Y. Aug. 2, 2012) ("While some of Benjamin's fellow Plaintiffs also make allegations about a hostile work environment, the record does not indicate that Benjamin was aware of any comments made to other Plaintiffs, let alone was present to hear them and have them impact his own work environment."); *cf. Greaves v. St. Luke's/Roosevelt Hosp. Ctr.*, 03-CV-7424, 2005 U.S. Dist. LEXIS 4082, at *33 (S.D.N.Y. March 17, 2005) (rejecting plaintiff's Section 1981 claim of hostile work environment because, "[w]ith the exception of a single hearsay remark, made outside his presence, Greaves fails to point to any discriminatory insult or abuse").

after Plaintiff's deposition (on January 29, 2015) and the close of discovery (on February 6, 2015). (Dkt. No. 88, Attach. 21 [Adams Aff., dated July 6, 2015]; Text Order filed Jan. 28, 2015.)

While ordinarily the Court would be inclined to permit a *pro se* litigant to change the landscape of her claims in response to a motion to dismiss for failure to state a claim, the Court cannot permit Plaintiff to change the landscape of her claims here for four reasons: (1) Plaintiff is not proceeding *pro se* but has an experienced attorney; (2) Plaintiff has already amended her claims (through filing an Amended Complaint); (3) Plaintiff does not attempt to change her claims in response to a motion to dismiss for failure to state a claim but a motion for summary judgment; and (4) discovery was closed when Plaintiff filed her response. *See Matyn v. Allen*, 06-CV-1503, 2010 WL 3880510, at *4 & n.9 (N.D.N.Y. Sept. 28, 2010) (Suddaby, J.) (collecting cases).

When the problem is viewed through the lens of a discovery violation, if Plaintiff had testified at her deposition that someone had told her that Defendant Lanoue had called her a "Black bitch," then Defendant Lanoue would have been able to depose Plaintiff on the subject; similarly, if Plaintiff had identified that "someone" as Carol Adams, then Defendant Lanoue would have been able to depose Ms. Adams on the subject. However, neither thing appears to have occurred. Under the circumstances, to consider Paragraph 32 of Ms. Adams' affidavit in deciding Defendant Lanoue's motion for summary judgment would unfairly prejudice Defendant Lanoue. Moreover, it is far too late in this three-and-a-half-year-old case to reopen discovery and permit Defendant Lanoue to file another motion for summary judgment. Furthermore, Plaintiff offers no explanation for her failure to assert her "Black bitch" allegation before July 6,

2015.  Finally, this evidence is of relatively modest importance, because the term "Black bitch," while deplorable, is less tinged with racism than is the term "N-----."  *See Market*, 2003 WL 22697284, at *12 (N.D. Ill. Nov. 13, 2003) ("[T]hey called her names that were either tinged with race ('black bitch') or outright manifestations of racial animus ('n-----').").  For all of these reasons, the Court precludes, for purposes of Defendant Lanoue's motion, Paragraph 32 of Ms. Adams' affidavit.

Fourth, Plaintiff's sole evidence of her allegation that Defendant Lanoue called Jeffrey Walton a "N-----" is Plaintiff's (liberally construed) deposition testimony that an unidentified person told her that fact.  (Dkt. No. 4, at ¶ 64 [Plf.'s Am. Compl.]; Dkt. No. 79, Attach. 7, at 87, 99 [attaching pages "371" and "383" of Plf.'s Depo. Tr.]; *cf.* Dkt. No. 88, Attach. 21, at ¶ 23 [Adams Affid.].)  Again, such testimony is inadmissible hearsay.

Fifth, the Court certainly understands Plaintiff's feeling that Defendant Lanoue's dislike of her *must have been* caused by Plaintiff's race, given the condemnable racial incidents that allegedly occurred in the workplace.  The Court sympathizes with Plaintiff (given the adverse actions she appears to have experienced) and acknowledges that her case presents a close call.  However, the Court cannot ignore the point of law that a defendant cannot be held to possess racial animus based on the racial incidents caused by *others*, absent admissible record evidence that the defendant "direct[ly] participat[ed]" in those (or other) racial incidents.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004).

The Court notes that, according to the affidavit of Carol Adams (who apparently was the source of much of Plaintiff's information), several of the racial incidents that Plaintiff alleges solely involved Frank Harris (now deceased), Richard Boswell or Michael Tomassone.  (*See,*

*e.g.,* Dkt. No. 88, Attach. 21, at ¶¶ 49-52, 59-62, 66-72 [Adams Affid.].) The Court notes also that, as Plaintiff acknowledges, merely disliking President Obama does not make one racist. (Dkt. No. 79, Attach. 7, at 112-14 [attaching pages "396" through "398" of Plf.'s Depo. Tr.].) Moreover, the Court notes that it is not reasonable to infer that a reference to "Miss Piggy" is racist (by perpetuating a stereotype of a fat Black woman such as Aunt Jemima). (Dkt. No. 88, Attach. 21, at ¶ 28 [Adams Affid.].) *See also Lewis v. Erie Cnty. Med. Ctr. Corp.*, 907 F. Supp.2d 336, 348 (W.D.N.Y. 2012) (finding term "voodoo worker" not racist); *Eatman v. United Parcel Serv.*, 194 F.Supp.2d 256, 264-65 (S.D.N.Y. 2002) (finding comment about dreadlocked hair not racist); *Miller v. CC Info. Sys., Inc.*, 95-CV-6612, 1996 WL 480370, at *3 (N.D. Ill. Aug. 22, 1996) ("Referring to an individual, or their hair or attire as a space cadet, a flat disc, a space ship, an anteater, a peacock, a dead poodle, Medusa, or a sexual organ, can certainly be insulting. However, these terms have no objective link with race, and therefore fail to support Miller's hostile work environment claim."). Finally, the Court notes that, even assuming Defendant Lenoue used the term "woman of color" to refer to Plaintiff (coupled with the expression of a desire to "grab her neck and slam her against the wall" along with a dislike of Obama and one or more references to Miss Piggy), no admissible record evidence exists (e.g., the use of a sarcastic voice inflection) that the use of the term–which occurred on *one* occasion–was more indicative of racial animus than of a personality conflict. *See Sweezer v. Michigan Dep't of Corr.*, 229 F.3d 1154, at *5 (6th Cir. 2000) (finding that use of term "colored woman," even when followed by use of terms "n-----" and "bitch," were "more indicative of a personality conflict than of racial animus").

For all of these reasons, the Court grants Defendant Lanoue's motion for summary judgment.

**B.     Management Defendants' Second Motion for Summary Judgment**

After carefully considering the matter, the Court grants the Management Defendants'

motion for the reasons stated in their memoranda of law.  *See, supra,* Part I.C. of this Decision

and Order.  To that analysis, the Court adds four points.

First, the Court relies on each of the Management Defendants' many arguments except

two of them.  More specifically, the Court rejects the Management Defendants' argument that a

non-movant cannot create a genuine dispute of material fact on a motion for summary judgment

by submitting a *non-party's* affidavit contradicting the movant's prior sworn deposition

testimony.  The cases cited by the Management Defendants for that point of law do not in fact

stand for that point of law (but merely for the point of law that a non-movant cannot create a

genuine dispute of material fact on a motion for summary judgment by submitting *his or her own*

affidavit contradicting his or her own prior sworn deposition testimony).  (Dkt. No. 96, at 11

[attaching page "7"" of Mgmt. Defs.' Reply Memo. of Law].)  *See also Hayes v. New York City*

*Dep't. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by

submitting an affidavit in opposition to a summary judgment motion that, by omission or

addition, contradicts the affiant's previous deposition testimony.").

The Court also rejects the Management Defendants' argument (to the extent they make

one) that Plaintiff is bound (during her defense of the claims challenged by Management

Defendants' *second* motion for summary judgment) by the evidence adduced by the parties

during the Management Defendants' *first* motion for summary judgment.  The Court must decide

a second motion for summary judgment based on the material record evidence (including the

new evidence) presented to it at that time.  *See Wechsler v. Hunt Health Sys., Ltd.*, 198 F.

Supp.2d 508, 514 (S.D.N.Y. 2003) ("A party may renew its motion for summary judgment as long as it is supported by new material."); *Keehan v. Keehan*, 96-CV-2481, 2000 WL 502854, at *3 (S.D.N.Y. Apr. 25, 2000) ("Because the party renewing its motion is limited to issues relating to the new material, defendants may not revisit the Court's finding with respect to defendant Keehan's status as an officer or director of BCP, which, for summary judgment purposes, is now the law of the case."). Of course, this does not mean that Plaintiff may resurrect dismissed claims.

Second, with regard to Plaintiff's deficient Rule 7.1 Response, the Court incorporates by reference the second point made above in Part III.A. of this Decision and Order (elaborating on Plaintiff's response to Defendant Lanoue's statement of material facts): that point is equally applicable to Plaintiff's response to the Management Defendants' statement of material facts. Again, the Court notes that, to the extent that Plaintiff's opposition contains a *second*[92] request for reconsideration of various of the Court's prior rulings, that request is denied on each of the following four alternative grounds: (1) it is untimely; (2) it is unsupported by a memorandum of law on the subject; (3) it is unsupported by an affidavit on the subject; and (4) it is unsupported by a showing of cause. *See, supra,* Part III.A. of this Decision and Order.

Third, with regard to Plaintiff's deficient opposition memorandum of law, the Management Defendants are entirely correct that, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.

---

[92]     Plaintiff's first request for reconsideration was filed on May 3, 2014, and denied on June 4, 2014. (Dkt. Nos. 57, 62.)

*See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court

determined that the moving party has met to demonstrate entitlement to the relief requested

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009

WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases). Here,

even when construed with the utmost of special liberality, the brief, confused and unsupported

arguments asserted by Plaintiff in her opposition memorandum of law fail to specifically

controvert the three arguments asserted by the Management Defendants in their memorandum of

law in chief. *See, supra,* Part I.C. of this Decision and Order.[93]

Fourth, of the numerous grounds that exist on which to grant the Management

Defendants' motion, the following one is particularly noteworthy. It is undisputed that the copy

of the final written notification that was given Plaintiff by Vavrasek on July 13, 2011, expressly

stated, in pertinent part, that "[t]his letter serves as final notification that this type of conduct will

not be tolerated and will result in termination if further instances occur." (Dkt. No. 81, Attach.

6, at 121-22 [attaching copy of notice]; *cf.* Dkt. No. 81, Attach. 2, at 121-22, 181-83 [attaching

pages "120," "121," "180," "181," and "182" of Plf.'s Depo. Tr., indicating prior receipt of final

---

[93]     Alternatively, the Court can, and does, deem the challenged claim(s) abandoned
(regardless of the facial merit of the unresponded-to argument). *See Jackson v. Federal Exp.*,
766 F.3d 189, 197-98 (2d Cir. 2014) ("Where a partial response to a motion is made– i.e.,
referencing some claims or defenses but not others–a distinction between *pro se* and counseled
responses is appropriate. In the case of a *pro se*, the district court should examine every claim or
defense with a view to determining whether summary judgment is legally and factually
appropriate. In contrast, in the case of a counseled party, a court may, when appropriate, infer
from a party's partial opposition that relevant claims or defenses that are not defended have been
abandoned. In all cases in which summary judgment is granted, the district court must provide an
explanation sufficient to allow appellate review. This explanation should, where appropriate,
include a finding of abandonment of undefended claims or defenses.").

written notification].)  Moreover, it is undisputed that, at the time of Plaintiff's termination, the Management Defendants had before them evidence that, merely two months after receiving the final written notification, Plaintiff called her supervisor, Jed Boswell, a "racist" without any factual support.  *See, supra,* Fact No. 48 in Part I.E. of this Decision and Order.  (Plaintiff's deposition testimony that she never called Boswell a "racist" is immaterial; what is material is that the Management Defendants *possessed evidence* that she called him a "racist" without factual support.) Furthermore, it is also undisputed that calling a supervisor a racist (without factual support) would violate GE's Schenectady Plant work rules.  *See, supra,* Fact No. 48 in Part I.E. of this Decision and Order.  Finally, it is undisputed that the Management Defendants expressly relied on the aforementioned evidence in terminating Plaintiff's employment.  *See, supra,* Fact Nos. 57-79 in Part I.E. of this Decision and Order.

Of course, Plaintiff argues that, in actuality, the Management Defendants were relying not on that evidence but their motive to retaliate against her for previously engaging in protected speech.  However, she offers no admissible record evidence of that retaliatory motive.  For example, there was no evidence of retaliatory animus by the Management Defendants (e.g., their use of racial epithets).  Similarly, she offers no admissible record of disparate treatment of employees who engaged in similar conduct.  Finally, she offers no admissible record evidence of a very close proximity between the Management Defendants' knowledge of Plaintiff's protected speech and her termination on September 20, 2011.  Certainly, the Management Defendants cannot reasonably be said, at least based on the current record, to have *known* that her statements to Boswell on September 14, 2011, were protected.  Rather, any protected speech by Plaintiff occurred months, if not years, before September 20, 2011.  *See Clark Cnty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273-74 (2001) (citing cases finding temporal proximity of three months and more

to be insufficient); *Abdullah v. Panko Elec. & Maint., Inc.*, 08-CV-0579, 2011 WL 1103762, at

*18 (N.D.N.Y. Mar. 23, 2011) (granting summary judgment where plaintiff was terminated for

insubordination more than two months after his complaints).  This is not sufficient to meet the

standard of "but for" causation set forth by the Supreme Court in *Univ. of Tex. Sw. Med. Ctr. v.

Nassar*, 133 S. Ct. 2517 (2013).

 At most, what the Court is left with is an argument that the Management Defendants'

reliance on the evidence in question was ill-advised or mistaken; of course, that is not enough to

render them liable for retaliation.  *See Duckett v. Wal-Mart Stores, Inc.*, 07-CV-6204, 2009 WL

995614, at *11-12 (W.D.N.Y. Apr. 14, 2009) (noting that "when analyzing a pretext claim the

inquiry is whether the employer's stated reason is the actual reason for the challenged action and

not whether the employer's stated reason for its decision is ill-advised, mistaken, or

unreasonable").  This is the case no matter how ardently Plaintiff believes that GE's previous

investigation of her claims of racial discrimination was a "sham" in light of various of her co-

workers' offensive (and indeed deplorable) conduct.

 For all of these reasons, the Court grants the Management Defendants' motion for

summary judgment.

 **ACCORDINGLY**, it is

 **ORDERED** that Defendant Michele Lanoue's motion for summary judgment (Dkt. No.

79) is **GRANTED**; and it is further

 **ORDERED** that the Management Defendants' motion for summary judgment (Dkt. No.

81) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendants and close

this action.

Dated: March 14, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge